UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

SHELDON LEE HUTCHINS,

     Plaintiff,

v.                                CASE NO.: 3:20-CV-05952-MCR-ZCB

DAVID MICHAEL ROWELL, et al.,

     Defendants.
_____

## DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S FIFTH AMENDED COMPLAINT

Defendants Eric Hays, David Rowell, Kurt Schultz, and Patrick Campbell (hereinafter referred to as "Hays," "Rowell," "Schultz," and "Campbell," respectively), and collectively referred to hereinafter as "Defendants," pursuant to the Fed. R. Civ. P. 12(b)(6) and N.D. Fla. Local R. 7.1 move to dismiss Plaintiff's Fifth Amended Complaint (ECF No. 30) and in support thereof, state the following:

1.    On November 20, 2020, Plaintiff filed his Complaint. ECF No. 1. This Court thereafter determined that Plaintiff's documents were deficient and required Plaintiff to correct those deficiencies before the litigation could proceed. ECF No. 4.

2.     On January 14, 2021, Plaintiff filed his First Amended Complaint. ECF No. 8. After review, this Court determined that Plaintiff's allegations failed to state a claim for relief against various defendants but allowed Plaintiff to amend his pleading. ECF No. 12.

3.     On December 8, 2021, Plaintiff filed a Second Amended Complaint. ECF No. 21. After review, this Court determined that Plaintiff failed to state a claim against the Santa Rosa County Sheriff's Office but allowed Plaintiff another opportunity to amend. ECF No. 23.

4.     On January 3, 2022, Plaintiff filed a Third Amended Complaint. ECF No. 24. After review, this Court determined that Plaintiff's pleading was deficient and required Plaintiff to file an amended pleading. ECF No. 25.

5.     On April 1, 2022, Plaintiff filed a Fourth Amended Complaint. ECF No. 27. After review, this Court determined that Plaintiff had failed to state a claim as to one or more of his claims and the pleading was subject to dismissal; however, Plaintiff was allowed to amend. ECF No. 29.

6.     On June 21, 2022, Plaintiff filed a Fifth Amended Complaint. ECF No. 30. This Court allowed Plaintiff's claims to proceed against the above-named Defendants and thereafter Defendants Hays, Schultz, Rowell, and Campbell filed waivers of service. ECF Nos. 35, 36, 37, 38.

7.    From review of the Fifth Amended Complaint, it appears that Plaintiff seeks to assert duplicative Fourth and Eighth Amendment claims regarding a single incident which occurred at the Santa Rosa County Jail on April 17, 2019. Based on Plaintiff's prisoner status at the time of the alleged incident, Plaintiff fails to state a claim under the Eighth Amendment, pursuant to Rule 12(b)(6), F.R.C.P.

8.    As to the excessive force claim brought pursuant to the Fourth Amendment, Plaintiff has failed to state a claim upon which relief can be granted pursuant to Rule 12(b)(6), F.R.C.P., as to Hays, Rowell, Schultz, and Campbell. Plaintiff has failed to allege sufficient facts to establish a constitutional violation.

9.    Because Plaintiff has failed to allege a constitutional violation, Hays, Rowell, Schultz, and Campbell are entitled to qualified immunity.

WHEREFORE, and for the reasons set forth more fully below, the Defendants respectfully request that this Court grant their Motion to Dismiss Plaintiff's Fifth Amended Complaint.

## **MEMORANDUM OF LAW**

### A.    **Standard of Review of Rule 12(b)(6) Motion**

A complaint must "include sufficient factual matter, accepted as true, to 'state a claim of relief that is plausible on its face'," *Ashcroft v. Iqbal*, 556

U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 547 (2007)), and if it does not, the complaint is subject to dismissal. *See* Fed. R. Civ. P. 12(b)(6). A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *See Iqbal*, 556 U.S. at 677-78. While detailed factual allegations are not required, the pleader must do more than merely invoke labels, conclusions, and the formulaic elements of a cause of action. *Twombly*, 550 U.S. at 555.

When a Court considers "a Motion to Dismiss, all facts set forth in the plaintiff's complaint 'are to be accepted as true and the court limits its consideration to the pleading *and exhibits attached thereto*'." *GSW, Inc. v. Long County*, 999 F.2d 1508, 1510 (11th Cir. 1993) (emphasis added). In the present case, Plaintiff attaches to his Fifth Amended Complaint an exhibit, which includes a nine-page incident report with statements made by several of the Defendants, as the factual basis for his claims. Indeed, he references "Exhibit A" often throughout his Complaint in support of his allegations and incorporates and adopts the narratives therein. ECF No. 30 at 8 – 11, 14.

The statements within Plaintiff's exhibit (ECF No. 30-1) show affirmatively that Plaintiff has failed to state a claim upon which relief can be

granted under § 1983. "To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988) (citing *Parratt v. Taylor*, 451 U.S. 527, 535 (1981), *overruled in part on other grounds, Daniels v. Williams*, 474 U.S. 327, 330 – 31 (1986)). Because Plaintiff fails to allege a constitutional violation, the Defendants are entitled to qualified immunity as a matter of law, which will be supported more fully below.

## B.    Official Capacity Claims

Plaintiff appears to attempt to bring claims against all Defendants in both their individual and official capacities. *See* ECF No. 30 at 4, 5. However, Plaintiff fails to state an official capacity claim against any of the Defendants. Official capacity suits "generally represent only another way of pleading an action against an entity of which an officer is an agent." *Kentucky v. Graham*, 473 U.S. 159, 165 – 66 (1985) (quoting *Monell v. New York City Dept. of Soc. Servs.*, 436 U.S. 658, 690 n.55 (1978)). Thus, "an official capacity suit against a government official is generally treated as a suit against the underlying governmental entity." *Scott v. Taylor*, 405 F.3d 1251, 1254 (11th Cir. 2005) (citing *Graham*, 473 U.S. at 165 – 67).

Further, a governmental entity may only be held liable under § 1983 when there was a custom or policy that constituted deliberate indifference to a constitutional right which was violated and it was that policy or custom which caused the violation. *Monell*, 436 U.S. at 694 – 95. Plaintiff has made no such allegation. Accordingly, to the extent that Plaintiff is attempting to raise such a claim, this Court should dismiss all official capacity claims alleged by Plaintiff for failure to state a claim upon which relief can be granted, pursuant to Rule 12(b)(6), F.R.C.P.

## C.   Plaintiff Fails to State a Claim for Relief as to Hays, Rowell, Schultz, and Campbell

Turning to the individual capacity claims, Plaintiff alleges two claims against each of the Defendants, a violation of the Fourth Amendment and a violation of the Eighth Amendment. ECF No. 30 at 12 – 15. However, both claims against the Defendants appear to be based upon identical facts: the alleged excessive force Plaintiff contends he was subjected to during his intake process on April 17, 2019, at the Santa Rosa County Jail. To that end, the claims are duplicative, and cannot both be asserted as a matter of law.

The Eighth Amendment prohibits "cruel and unusual punishments" but the Supreme Court has interpreted this to prohibit such against convicted prisoners. *See Hudson v. McMillian*, 503 U.S. 1, 9 (1992). Clearly, this would

not apply to the state of the Plaintiff at the time of the alleged excessive force, as is clear from the incident report.[1] The Fourth Amendment contains a prohibition against "unreasonable ... seizures" and includes excessive force in the course of an arrest. *See Graham v. Connor*, 490 U.S. 386, 394 (1989). At the time of the Plaintiff's alleged excessive force, he had recently been arrested but the alleged incident occurred during the intake process into the jail. In a recent order, this Court characterized Plaintiff's allegations to be those which arise under the Fourth Amendment and not the Fourteenth Amendment[2] and dismissed Plaintiff's due process claims based on allegations of excessive force during a seizure. *See* ECF No. 29 at 5 – 6. Accordingly, the Defendants will address herein that Plaintiff has failed to state claims for excessive force under the Fourth Amendment and that the allegations do not set forth a constitutional violation.

Claims of excessive force under the Fourth Amendment are measured "under an objective reasonableness standard." *Patel v. City of Madison*, 959 F.3d 1330, 1338 (11th Cir. 2020). The operative question under this standard

---

[1] Plaintiff states in his Complaint that he is a "convicted state prisoner" but Plaintiff had not been convicted at the time of the alleged incident.

[2] *See Crocker v. Beatty*, 995 F.3d 1232, 1246 – 47, 1254 – 55 (11th Cir. 2021) (citing *Hicks v. Moore*, 422 F.3d 1246, 1254 n.7 (11th Cir. 2005)) ("the precise point at which a seizure ends (for purposes of Fourth Amendment coverage) and at which pretrial detention begins (governed until a conviction by the Fourteenth Amendment) is not settled in this Circuit.")).

asks whether "the officer's ... conduct [was] objectively reasonable in light of the facts confronting the officer." *Id*. (quoting *Vineyard v. Wilson*, 311 F.3d 1340, 1347 (11th Cir. 2002)). A court considers the following when asking whether an officer's use of force was reasonable under the Fourth Amendment: (1) the severity of the crime; (2) whether the individual posed an immediate threat to the safety of the officers or others; (3) whether the individual actively resisted arrest or attempted to evade arrest by flight; (4) the need for the force to be applied; (5) the amount of force applied in light of the need for the force; and (6) the severity of the injury. *Id*. (citing *Graham*, 490 U.S. at 396, as to the first three factors, and *Lee v. Ferraro*, 284 F.3d 1188, 1197-98 (11th Cir. 2002) as to the remainder). The Court will not act as a "Monday-morning quarterback"; rather, the question will be that of the reasonableness of the force from the perspective of a "reasonable officer on the scene." *Id*. (citing *Graham*, 490 U.S. at 396).

An officer "violates the Fourth Amendment, and is denied qualified immunity, if he or she uses gratuitous and excessive force against a suspect who is under control, not resisting, and obeying commands." *Saunders v. Duke*, 766 F.3d 1262, 1265 (11th Cir. 2014). Plaintiff has not stated a claim against any of the Defendants because, based on Plaintiff's own allegations and the incorporated exhibit, at the time force was used against him, he was

not under control, was resisting and not obeying lawful commands, and was acting in a manner which placed himself at risk for harm; thus, the force used to temper his obstruction was not gratuitous or excessive.

***Allegations***

While Plaintiff's statement of facts present a version of the events, under the law, the attached incident report (ECF No. 30-1), and the facts set forth therein, control. *Friedman v. Market St. Mortg. Corp.*, 520 F.3d 1289, 1295 n.6 (11th Cir. 2008) ("where there is a conflict between allegations in a pleading and exhibits thereto, it is well settled that the exhibits control.") The narratives in the incident report establish that no constitutional violation occurred on April 17, 2019. When Plaintiff was brought into the facility, he was observed chewing on something in his mouth. ECF No. 30-1 at 3, 6. Hays' narrative states that both he and Rowell advised Plaintiff "several times to spit out the object and he wouldn't be charged with introduction" but that Plaintiff refused to comply to all commands. *Id*. at 3. At this time, Plaintiff was observed to be sweating and under the influence of an intoxicant. Id. Nowlin states that he also gave Plaintiff several commands at this stage to spit out what was in his mouth or remove the item. *Id*. at 5. Nowlin states that Campbell also gave numerous similar orders, to which Plaintiff did not comply. *Id*. Pendleton's narrative also reflects that both Rowell and Hays

gave orders for Plaintiff to spit out the item in his mouth but that Plaintiff refused to comply. *Id*. at 6.

After Plaintiff's numerous refusals, Plaintiff was brought to the change out room so that a strip search could be conducted to ensure Plaintiff had no other items of contraband on his person. *Id*. at 2 – 7. In the change out room, Plaintiff continued to be given orders by Hays and Campbell and he continued to refuse those directives. *Id*. at 4 – 7. O.C. spray bursts were utilized upon Plaintiff's refusal to follow verbal commands. Plaintiff thereafter attempted to "snatch away" from the deputies and was placed on the floor for better officer control. *Id*. at 4. Plaintiff was given additional orders but he refused to comply; additional bursts of O.C. spray were administered with negative results. *Id*. At this time, Hays and Campbell administered mandibular pressure points, in an attempt to keep Plaintiff from swallowing what was in his mouth, and Campbell visually confirmed that Plaintiff held a plastic baggie in his cheek area. *Id*. Plaintiff was given additional commands which he refused and a contact tase to Plaintiff's back was administered with negative results. *Id*. Plaintiff was then placed on the floor to complete the strip search, at which point he attempted to "spit blood" at the deputies. *Id.* at 5. Plaintiff also grabbed at the deputies' hands and arms and, at one point, Hays' taser. *Id.* at 5 – 6. Plaintiff did not cooperate with the attempted strip

search and continued to physically resist. O.C. spray was again utilized to gain compliance, but Plaintiff continued to refuse lawful commands. *Id*. at 5. The officers were able to complete the strip search but Plaintiff refused to stand and still maintained the contraband in his mouth. *Id*. As a result of Plaintiff's continued non-compliance and obstructive behavior, officers attempted to place Plaintiff in a restraint chair; however, Plaintiff resisted directives given by staff to sit in the chair by attempting to stand up and fight with the staff. *Id*. at 7. He tried to kick the deputies present. *Id*. It was during this resistance that a contact tase to Plaintiff's chest was administered to gain compliance. *Id*. at 4. Plaintiff was successfully secured in the chair, but still had the item in his mouth, despite continued verbal commands to spit it out. *Id*. at 5. After a period of time, but under constant observation, Plaintiff was brought out for a decontamination shower and dressed in an orange jumpsuit. *Id*. at 6. Plaintiff was transported to the hospital because he still had the item in his mouth, and the contents of the bag were unknown. *Id*. at 7. Before the ambulance left the area, Plaintiff spit out the bag in his mouth, which was confiscated. *Id*. at 11.

### *Hays*

With regards to Defendant Hays, Plaintiff alleges Hays "gave explicit orders to inflict injury, and actively participated in inflicting excessive force

with the intent to cause bodily harm." ECF No. 30 at 11. Plaintiff alleges Hays: (1) ordered the administration of O.C. to the facial area of Plaintiff, (2) ordered his subordinates to administer O.C. spray to Plaintiff, (3) allowed Pendleton to use Cambell's taser to administer contact tasings to Plaintiff, and (4) administered contact tasings to Plaintiff. Plaintiff claims that it is these allegations which serve as the basis for the excessive force claim against him.

As previously argued, Plaintiff fails to state upon which relief can be granted as to Hays because all of Hays' actions were constitutionally sound and taken in response to Plaintiff's active resistance to the detention deputies', including Hays', lawful directives. The actions outlined in the incident report show that Plaintiff refused numerous lawful orders and directives throughout his time at the Santa Rosa County Jail and offered continuous physical resistance. Plaintiff was given numerous verbal commands to spit out the item that he had in his mouth but refused to do so. Plaintiff also attempted to engage in physical violence toward the officers, grabbing at them and kicking them at various times. Thus, in evaluating the excessive force claim against Hays, the question to be asked is whether his "actions are objectively reasonable in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation."

*Garczynski v. Bradshaw*, 573 F.3d 1158, 1166-67 (11th Cir. 2009). Hays, as well as the other detention deputies, reasonably believed that Plaintiff possibly had concealed a drug or other illegal substance in his mouth. The concern for the safety of the Plaintiff is obvious: an inmate cannot be allowed to conceal items in or on his body and be admitted into a secure facility. Certainly, an officer may use force to extricate an item of contraband from an uncooperative individual who is being processed into a jail after an arrest. Thus, Plaintiff's continual refusals warranted application of force for compliance.

Hays's use of O.C. spray on Plaintiff in order to gain compliance to Plaintiff's refusal to spit out the item was not unconstitutional. *See McCormick v. City of Ft. Lauderdale*, 333 F.3d 1234, 1245 (11th Cir. 2003) ("Pepper spray is an especially noninvasive weapon and may be one very safe and effective method of handling a violent suspect who may cause further harm to himself or others."); *see also Vineyard*, 311 F.3d at 1348 ("Indeed, pepper spray is a very reasonable alternative to escalating a physical struggle with an arrestee."). Each time the O.C. spray was utilized, it was after a verbal command had been given and Plaintiff refused to comply. As to the mandibular hold alleged to have been utilized by Hays, such force was also constitutional under the circumstances. "[I]t is

constitutional for officers recognizing an attempt to swallow and destroy what appears to be narcotics to hold the suspect's throat and attempt to pry open the suspect's mouth by placing pressure against his jaw and nose." *German v. Sosa*, 399 Fed. Appx. 554, 557 (11th Cir. 2010) (*citing Espinoza v. United States*, 278 F.2d 802, 804 (5th Cir. 1960)[3]). During the mandibular hold, Campbell was able to view the plastic baggie in his mouth, and it is reasonable that, upon hearing this information, Hays and the other deputies would believe that Plaintiff was attempting to conceal an illegal substance. Under the circumstances, such an action is reasonable given the safety risk that possible drug/paraphernalia ingestion poses, combined with Plaintiff's active resistance.

With regards to the alleged contact tasings utilized by Hays, both on his own and at his direction, such actions are constitutional under the circumstances alleged. The use of a taser on a non-compliant pretrial detainee, or an individual at Plaintiff's legal status at the time of his entrance into the jail, cannot be deemed objectively unreasonable, specifically when those tasings come after repeated verbal instructions. A taser represents a reasonable amount of force when weighed against an officer's need to obtain

---

[3] In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as binding present all decisions of the former Fifth Circuit handed down prior to September 30, 1981.

compliance by an inmate with directives. *See Zivojinovich v. Barner*, 525 F.3d 1059, 1073 (11th Cir. 2008) (nothing the Eleventh Circuit's present that "the use of a taser gun to subdue a suspect who has repeatedly ignored police instructions and continued to act belligerently toward police is not excessive force."). Plaintiff's continued non-compliance and the fact that he maintained the item in his mouth over a period of time would indicate that his injuries from the contact tasings were not severe or incapacitating. Despite the contact tasings, Plaintiff continued to receive directives from Hays, which he continued to refuse; such continued directives are evidence of a continued effort to limit the amount of force used. Additionally, the incident report outlines that the tasings were only initiated for compliance upon Plaintiff's continued resistance. For example, Plaintiff tried to stand up multiple times when he was being placed into the restraint chair but once Plaintiff was secured in the chair, no other tasing is alleged to have taken place. The force, then, was undisputedly undertaken with a legitimate purpose and against an individual who was actively resisting lawful commands and directives. The contact tasings were appropriate and reasonable under the circumstances.

Finally, Plaintiff takes issue with Hays' allowing him to be restrained in handcuffs and leg shackles while he was in signs of medical distress;

however, this allegation is not supported by the facts. As previously outlined, there was a need for the application of some force against Plaintiff, as he failed to follow commands given by Hays and others. After utilizing the O.C. spray, Plaintiff became physically non-compliant, which necessitated Plaintiff being restrained in the restraint chair. Numerous less forceful means had been utilized prior to this; however, Plaintiff remained non-compliant and thereafter became physically combative. Thus, there was a clear need for restraints and the force used was not disproportionate to the need. *See Campbell v. Sikes*, 169 F.3d 1353, 1374-77 (11th Cir. 1999) (recognizing that the user of "L" shaped restraint and straightjacket was a permissible use of force on prisoner who had taken affirmative acts toward harming herself and posed a serious threat of further self-harm).

When looking at the relationship between the need for and the amount of force used, federal courts have routinely held that officers can use a higher level of force to prevent an arrestee from swallowing or ingesting drugs. *Johnson v. Rogers*, No. 3:10-cv-50-wkw, 2012 WL 3231327, at *8 (M.D. Ala. July 11, 2012) (a chokehold was not unconstitutional when it was believed a suspect had crack cocaine in his mouth); *German v. Sosa*, 399 Fed. Appx. at 557; *Williams v. Bramer,* 180 F.3d 699, 704 (5th Cir. 1999) (an officer can search a suspect's mouth for drugs); *United States v. Caldera,* 421 F.2d 152,

153 (9th Cir. 1970) (officers may use reasonable force to prevent a suspect attempting from swallowing drugs); *Espinoza,* 278 F.2d at 804 (federal officers who, without a warrant, obtained drug evidence from defendant's mouth as he was attempting to swallow and destroy the evidence "by grabbing the defendant about the throat," and "attempting to pry open his mouth by placing pressure against his jaw and nose," defendant's claim of excessive force was meritless). The allegations by Plaintiff support this notion; that the force utilized by Hays, and at his direction, was proportional to the established need to ensure contraband did not enter the jail and ensure Plaintiff's physical safety as well as the officers conducting his intake. Additionally, Plaintiff fails to allege injuries which are severe or incapacitating resulting from this incident. *See Riggins v. Beseler*, 568 Fed. Appx. 850, 853 (11th Cir. 2014) (holding that as Plaintiff's self-serving statement that he suffered scarring from a taser gun being used in drive stun mode without any additional evidence was not sufficient to establish that his injuries were more than de minimis). Injuries which result from Plaintiff's *own* behavior are insufficient. Accordingly, Plaintiff has failed to state a claim for excessive force against Hays as to the incident which occurred at the Santa Rosa Jail on April 17, 2019.

***Rowell***

Plaintiff alleges that Rowell is liable under § 1983 for excessive force because he "actively participated in the restraint and administration of cruel and unusual punishment when he held the Plaintiff down so that Lt. Hays could inflict the bodily injuries to the Plaintiff." ECF No. 30 at 12, ¶2. Plaintiff also alleges that Rowell is liable for excessive force by "allow[ing] illegal activity to take place" which made him "an accomplice." *Id*. However, as previously established, the actions alleged by Plaintiff do not state a claim for excessive force; the administration of O.C. spray, the contact tasings, and the application of restraints were all objectively reasonable in light of Plaintiff's continued resistance and disobedience to lawful commands. Further, there are no facts which support Plaintiff's statement that he was "held down" by Rowell. There is no reference whatsoever in the incident report that Rowell ever touched Plaintiff once Plaintiff arrived at the jail and entered into the intake area. Indeed, Rowell was the arresting officer whose involvement does not extend beyond giving Plaintiff commands to spit out the item in his mouth at intake. There are no facts to support any assertion that Rowell acted in a manner which could be construed as objectively unreasonable. Accordingly, Plaintiff has failed to state a claim for excessive force against Rowell as to the incident which occurred at the Santa Rosa Jail on April 17, 2019.

***Schultz***

Plaintiff alleges that Schultz is liable under § 1983 for excessive force because he "actively participated in restraining the Plaintiff and holding him down while Lt. Hays and other deputies administered the illegal excessive force," "helped in placing the Plaintiff in the restraint chair while he was being tortured by Lt. Hays' administering his taser to the back and chest of Plaintiff" and, like Rowell, "was an accomplice." *Id*. at 13, ¶4. The argument regarding Defendant Schultz is similar to that of Rowell; the administration of O.C. spray, the contact tasings, and the application of restraints were all objectively reasonable in light of Plaintiff's continued resistance and disobedience to lawful commands. Further, the placing of Plaintiff in the restraint chair was objectively reasonable and, under the circumstances alleged, not unconstitutional; thus, any assistance that Schultz would have provided to that end would not have violated the rights of Plaintiff. Further, the narratives establish that the contact tasings were administered as a result of Plaintiff's obstructive and non-compliant behavior. Accordingly, Plaintiff has failed to state a claim for excessive force against Schultz as to the incident which occurred at the Santa Rosa Jail on April 17, 2019.

***Campbell***

Plaintiff alleges that Campbell is liable under § 1983 for excessive force because he "ordered Deputy Pendleton to spray O.C. (pepper spray) spray in the face of the Plaintiff," "ordered the deputies to throw Plaintiff on the ground," "ordered and assisted in the holding of Plaintiff's eyes wide open so that he could distribute O.C. (pepper spray) directly into them," "ordered Deputy Pendleton ... to take out his taser from it's holster ... and administer repeated shock," and "ordered the torture to the Plaintiff through his direct orders to his subordinates." *Id*. at 15, ¶6. As previously outlined, at the time that O.C. spray had been administered to Plaintiff, he had been given numerous verbal commands to spit out the item in his mouth and he refused each time. The administration of O.C. spray was reasonable under the circumstances alleged. There are no facts to support that the O.C. spray was administered in any way which could be construed as objectively unreasonable. The contact tasings were likewise administered as a result of Plaintiff's refusal to comply with lawful commands; thus their administration was objectively reasonable. There is no factual support for Plaintiff's claim that he was "thrown" to the ground; the narratives describe how Plaintiff was put on the floor so that he could be strip searched and for better officer control. Placing a non-compliant inmate on the floor so that a strip search may be completed safely is objectively reasonable. Finally, as to Plaintiff's

claim of "torture," the narrative sets forth a series of facts from which this Court can determine that all uses of force were reasonable under the circumstances alleged and did not violate Plaintiff's constitutional rights. Accordingly, Plaintiff has failed to state a claim for excessive force against Campbell as to the incident which occurred at the Santa Rosa Jail on April 17, 2019.

## D.    Qualified Immunity

Qualified immunity shields officers from liability; indeed, it shields all officers except those who are "plainly incompetent or one who is knowingly violating the federal law." *Lee*, 284 F.3d at 1194. The doctrine provides "immunity from suit rather than a mere defense to liability." *Pearson v. Callahan*, 555 U.S. 223, 237 (2009) (quoting *Mitchell v. Forsyth*, 472 U.S. 511, 526, (1985)) (internal quotations omitted). Consequently, the court must "resolv[e] immunity questions at the earliest possible stage in litigation." *Pearson*, 555 U.S. at 232 (quoting *Hunter v. Bryant,* 502 U.S. 224, 227 (1991)) (internal quotations omitted). When determining whether an officer is entitled to qualified immunity, the Court will balance "the need to hold [officers] accountable when they exercise power irresponsibly and the need to shield [them] from harassment, distraction, and liability when they perform their duties reasonably." *Pearson*, 555 U.S. at 231. Qualified immunity

should be applied to Hays, Rowell, Schultz, and Campbell unless Plaintiff can allege facts which show that their actions, individually, were so egregious and unacceptable to have *blatantly* violated the Constitution. *See Lewis v. City of W. Palm Beach, Fla.,* 561 F.3d 1288, 1292 (11th Cir. 2009). This standard is only met when "every reasonable officer would conclude that the excessive force used was plainly unlawful." *Id.* (citing *Priester v. City of Riviera Beach, Fla.,* 208 F.3d 919, 926–27 (11th Cir.2000)). An officer asserting qualified immunity has the burden to show that he was acting within his discretionary authority at the time of the alleged incident. *Piazza v. Jefferson Cnty.*, 923 F.3d 947, 951 (11th Cir. 2019). Here, Plaintiff does not assert that the officers were acting in any other capacity other than as deputies employed by the Santa Rosa County Sheriff's Office at the time of the allegations. In his Complaint, Plaintiff routinely refers to the various Defendants by their titles, that being "deputy," "Lt.," and "Sgt.," for example. The narratives in the incident report also confirm that the officers' actions were "undertaken pursuant to the performance of [their] duties and within [their] scope of authority." *Rich v. Dollar*, 841 F.2d 1558, 1564 (11th Cir. 1988) (quoting *Barker v. Norman,* 651 F.2d 1107, 1121 (5th Cir.1981)). As to Hays, Schultz, and Campbell, processing an arrestee through intake for entrance into a jail would involve searches for contraband, which would be

considered part of the performance of a detention deputy's normal job duties and within their delegated authority. As to Rowell, transporting an arrestee to jail and turning them over to the detention deputies at that location for processing would likewise be considered part of the performance of a Deputy Sheriff's normal job duties and within his delegated authority. Plaintiff asserts no facts to the contrary. Accordingly, it can be concluded that the Defendants have satisfied their "discretionary function" burden at this stage of the proceedings.

If an officer satisfies his burden of demonstrating that he was acting within the scope of his discretionary authority when the allegedly wrongful acts occurred, the burden then shifts to the plaintiff to establish that the officer violated a constitutional right that was clearly established at the time of the alleged violation. *Piazza*, 923 F.3d at 951. The officer is entitled to qualified immunity if the plaintiff fails to show either that there was some constitutional violation or that it was clearly established, and a Court may consider these two elements in either order. *Id.* As previously outlined, none of the alleged acts complained of by Plaintiff constitute a constitutional violation. The force used against him on April 17, 2019, was "reasonably proportionate to the need for that force." *Lee*, 284 F.3d at 1198. Plaintiff resisted numerous lawful commands by the Defendants and posed an

objectively immediate threat to his own safety and, at various points, the safety of the detention deputies. Plaintiff has failed to establish that either Hays, Rowell, Schultz, or Campbell violated his right to be free from excessive force under the Fourth Amendment.

Plaintiff likewise cannot show that the right he contends was violated "was clearly established at the time of the alleged violation." *Piazza* 923 F.3d at 951. In doing this, Plaintiff would have to show that "every reasonable official would have understood that what he is doing violates the Constitutional right at issue." Gates v. Khokhar, 884 F.3d 1290, 1303 (2018). This inquiry "must be undertaken in light of the specific context of the case, not as a broad general proposition." *Saucier v. Katz*, 533 U.S. 194, 202 (2001); *see also Mullenix v. Luna*, 577 U.S. 7, 12 (2015) ("The dispositive question is whether the violative nature of *particular* conduct is clearly established." (internal quotation marks omitted)). It is well-settled in this circuit that force can be used against an individual who is believed to have contraband in his mouth but refuses to remove it. *German*, 399 Fed. Appx. at 557. Courts have also recognized that various forms of non-lethal force may be used against an individual who continually resists lawful commands or creates a security risk inside of a jail environment. *See McCormick*, 333 F.3d at 1245; *Zivojinovich*, 525 F.3d at 1073; *Fennell v. Gilstrap*, 559 F.3d

1212, 1217 (11th Cir. 2009) (an officer may use force "in a good-faith effort to maintain or restore discipline"); *Bennett v. Parker*, 898 F.2d 1530, 1533 (11th Cir. 1990) ("prison guards may use force when necessary to restore order and need not wait until disturbances reach dangerous proportions before responding"). The foregoing analysis, in light of the relevant case law in this Circuit, establishes that at the time of the incident there was no clearly established law identifying any of the uses of force as unconstitutional. As discussed above, the facts plainly support this Court finding that the Defendants acted, at all times, in an objectively reasonable manner based upon Plaintiff's behavior. Hays, Rowell, Schultz, and Campbell are entitled to qualified immunity.

## **CONCLUSION**

Plaintiff has failed to state claims of excessive force against the Defendants. Accordingly, because Plaintiff has failed to allege sufficient facts which establish to that his constitutional rights were violated by Hays, Rowell, Schultz, or Campbell, they are entitled to qualified immunity. Plaintiff has been provided five opportunities to allege a viable constitutional violation against any Defendant based on the incident which occurred in the jail on April 17, 2019 and has failed to do so. As a result, Plaintiff's Fifth Amended

Complaint is due to be dismissed with prejudice, against Hays, Rowell, Schultz, and Campbell.

## CERTIFICATE OF COMPLIANCE OF RULE 7.1

Pursuant to Local Rule 7.1(F), I hereby certify that the foregoing motion and memorandum is 5663 words in length.

Respectfully submitted this 13th day of January 2023.

WARNER LAW FIRM, P. A.

*/s/ Alicia D. Carothers*
ALICIA D. CAROTHERS
Florida Bar No. 0099339
501 W. 11th Street, Suite A
Panama City, FL  32401
Phone No. (850) 784-7772
pleadings@warnerlaw.us

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a copy of the foregoing was filed via CM/ECF this 13th day of January 2023, and a copy was mailed through USPS to Plaintiff at:

Lawtey Correctional Institute
P.O. Box 2000
Lawtey, FL 32058

*/s/ Alicia D. Carothers*
ALICIA D. CAROTHERS
Florida Bar No. 0099339