UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

SHELDON LEE HUTCHINS,

     Plaintiff,

v.                            CASE NO.: 3:20-CV-05952-MCR-ZCB

DAVID MICHAEL ROWELL, et al.,

     Defendants.

_____

## **DEFENDANT NOWLIN'S MOTION TO DISMISS PLAINTIFF'S FIFTH AMENDED COMPLAINT**

Defendant Aaron Nowlin (hereinafter referred to as "Nowlin") pursuant to the Fed. R. Civ. P. 12(b)(6) and N.D. Fla. Local R. 7.1 moves to dismiss Plaintiff's Fifth Amended Complaint (ECF No. 30) and in support thereof, states the following:

1.     On November 20, 2020, Plaintiff filed his Complaint. ECF No. 1. This Court thereafter determined that Plaintiff's documents were deficient and required Plaintiff to correct those deficiencies before the litigation could proceed. ECF No. 4.

2.     On January 14, 2021, Plaintiff filed his First Amended Complaint. ECF No. 8. After review, this Court determined that Plaintiff's allegations

failed to state a claim for relief against various defendants but allowed Plaintiff to amend his pleading. ECF No. 12.

3.     On December 8, 2021, Plaintiff filed a Second Amended Complaint. ECF No. 21. After review, this Court determined that Plaintiff failed to state a claim against the Santa Rosa County Sheriff's Office but allowed Plaintiff another opportunity to amend. ECF No. 23.

4.     On January 3, 2022, Plaintiff filed a Third Amended Complaint. ECF No. 24. After review, this Court determined that Plaintiff's pleading was deficient and required Plaintiff to file an amended pleading. ECF No. 25.

5.     On April 1, 2022, Plaintiff filed a Fourth Amended Complaint. ECF No. 27. After review, this Court determined that Plaintiff had failed to state a claim as to one or more of his claims and the pleading was subject to dismissal; however, Plaintiff was allowed to amend. ECF No. 29.

6.     On June 21, 2022, Plaintiff filed a Fifth Amended Complaint. ECF No. 30. This Court allowed Plaintiff's claims to proceed against the above-named Defendant.

7.     On February 14, 2023, this Court ordered the Clerk of Court to issue a summons to Defendant Nowlin, along with a copy of the Complaint and the Court's Order and ordered that the documents be provided to the U.S. Marshals Service.

8.     Nowlin was served with process on February 22, 2023, and the return of service was filed with the Court on March 15, 2023.

9.     From review of the Fifth Amended Complaint, it appears that Plaintiff seeks to assert duplicative Fourth and Eighth Amendment claims regarding a single incident which occurred at the Santa Rosa County Jail on April 17, 2019. Based on Plaintiff's prisoner status at the time of the alleged incident, Plaintiff fails to state a claim under the Eighth Amendment, pursuant to Rule 12(b)(6), F.R.C.P.

10.     As to the excessive force claim brought pursuant to the Fourth Amendment, Plaintiff has failed to state a claim upon which relief can be granted pursuant to Rule 12(b)(6), F.R.C.P., as to Nowlin. Plaintiff has failed to allege sufficient facts to establish a constitutional violation.

11..   Because Plaintiff has failed to allege a constitutional violation, Nowlin is entitled to qualified immunity.

WHEREFORE, and for the reasons set forth more fully below, Defendant Nowlin respectfully requests that this Court grant his Motion to Dismiss Plaintiff's Fifth Amended Complaint.

## **MEMORANDUM OF LAW**

**A.     Standard of Review of Rule 12(b)(6) Motion**

A complaint must "include sufficient factual matter, accepted as true, to 'state a claim of relief that is plausible on its face'," *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 547 (2007)), and if it does not, the complaint is subject to dismissal. *See* Fed. R. Civ. P. 12(b)(6). A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *See Iqbal*, 556 U.S. at 677-78. While detailed factual allegations are not required, the pleader must do more than merely invoke labels, conclusions, and the formulaic elements of a cause of action. *Twombly*, 550 U.S. at 555.

When a Court considers "a Motion to Dismiss, all facts set forth in the plaintiff's complaint 'are to be accepted as true and the court limits its consideration to the pleading *and exhibits attached thereto*'." *GSW, Inc. v. Long County*, 999 F.2d 1508, 1510 (11th Cir. 1993) (emphasis added). In the present case, Plaintiff attaches to his Fifth Amended Complaint an exhibit, which includes a nine-page incident report that includes a narrative by Nowlin, as the factual basis for his claims. Indeed, the Plaintiff references "Exhibit A" often throughout his Complaint in support of his allegations and incorporates and adopts the narratives therein. ECF No. 30 at 8 – 11, 14.

4

The statements within Plaintiff's exhibit (ECF No. 30-1) affirmatively establish that Plaintiff has failed to state a claim upon which relief can be granted under § 1983. "To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988) (citing *Parratt v. Taylor*, 451 U.S. 527, 535 (1981), *overruled in part on other grounds, Daniels v. Williams*, 474 U.S. 327, 330 – 31 (1986)). Because Plaintiff fails to allege a constitutional violation, Defendant Nowlin is entitled to qualified immunity as a matter of law, which will be supported more fully below.

## B.   Official Capacity Claims

Plaintiff appears to attempt to bring claims against Nowlin in both his individual and official capacities. *See* ECF No. 30 at 4, 5. However, Plaintiff fails to state an official capacity claim against him. Official capacity suits "generally represent only another way of pleading an action against an entity of which an officer is an agent." *Kentucky v. Graham*, 473 U.S. 159, 165 – 66 (1985) (quoting *Monell v. New York City Dept. of Soc. Servs.*, 436 U.S. 658, 690 n.55 (1978)). Thus, "an official capacity suit against a government official is generally treated as a suit against the underlying governmental

5

entity." *Scott v. Taylor*, 405 F.3d 1251, 1254 (11th Cir. 2005) (citing *Graham*, 473 U.S. at 165 – 67).

Further, a governmental entity may only be held liable under § 1983 when there was a custom or policy that constituted deliberate indifference to a constitutional right which was violated and it was that policy or custom which caused the violation. *Monell*, 436 U.S. at 694 – 95. Plaintiff has made no such allegation. Accordingly, to the extent that Plaintiff is attempting to raise such a claim against Nowlin, this Court should dismiss the official capacity claim alleged by Plaintiff for failure to state a claim upon which relief can be granted, pursuant to Rule 12(b)(6), F.R.C.P.

**C.**   **Plaintiff Fails to State a Claim for Relief as to Nowlin**

Turning to the individual capacity claim, Plaintiff alleges two claims against Nowlin, a violation of the Fourth Amendment and a violation of the Eighth Amendment. ECF No. 30 at 13. However, the claim against Nowlin appears to be based upon identical facts: the alleged excessive force Plaintiff contends he was subjected to during his intake process on April 17, 2019, at the Santa Rosa County Jail. To that end, the claims are duplicative, and cannot both be asserted as a matter of law.

The Eighth Amendment prohibits "cruel and unusual punishments" but the Supreme Court has interpreted this to prohibit such against convicted

prisoners. *See Hudson v. McMillian*, 503 U.S. 1, 9 (1992). Clearly, this would not apply to the state of the Plaintiff at the time of the alleged excessive force, as is clear from the incident report.[1] The Fourth Amendment contains a prohibition against "unreasonable ... seizures" and includes excessive force in the course of an arrest. *See Graham v. Connor*, 490 U.S. 386, 394 (1989). At the time of the Plaintiff's alleged excessive force, he had recently been arrested but the alleged incident occurred during the intake process into the jail. In a recent order, this Court characterized Plaintiff's allegations to be those which arise under the Fourth Amendment and not the Fourteenth Amendment[2] and dismissed Plaintiff's due process claims based on allegations of excessive force during a seizure. *See* ECF No. 29 at 5 – 6. Accordingly, Nowlin will address herein that Plaintiff has failed to state a claim for excessive force under the Fourth Amendment and that the allegations do not set forth a constitutional violation against him.

Claims of excessive force under the Fourth Amendment are measured "under an objective reasonableness standard." *Patel v. City of Madison*, 959

---

[1] Plaintiff states in his Complaint that he is a "convicted state prisoner" but Plaintiff had not been convicted at the time of the alleged incident.

[2] *See Crocker v. Beatty*, 995 F.3d 1232, 1246 – 47, 1254 – 55 (11th Cir. 2021) (citing *Hicks v. Moore*, 422 F.3d 1246, 1254 n.7 (11th Cir. 2005)) ("the precise point at which a seizure ends (for purposes of Fourth Amendment coverage) and at which pretrial detention begins (governed until a conviction by the Fourteenth Amendment) is not settled in this Circuit.")).

F.3d 1330, 1338 (11th Cir. 2020). The operative question under this standard asks whether "the officer's ... conduct [was] objectively reasonable in light of the facts confronting the officer." *Id*. (quoting *Vineyard v. Wilson*, 311 F.3d 1340, 1347 (11th Cir. 2002)). A court considers the following when asking whether an officer's use of force was reasonable under the Fourth Amendment: (1) the severity of the crime; (2) whether the individual posed an immediate threat to the safety of the officers or others; (3) whether the individual actively resisted arrest or attempted to evade arrest by flight; (4) the need for the force to be applied; (5) the amount of force applied in light of the need for the force; and (6) the severity of the injury. *Id*. (citing *Graham*, 490 U.S. at 396, as to the first three factors, and *Lee v. Ferraro*, 284 F.3d 1188, 1197-98 (11th Cir. 2002) as to the remainder). The Court will not act as a "Monday-morning quarterback"; rather, the question will be that of the reasonableness of the force from the perspective of a "reasonable officer on the scene." *Id*. (citing *Graham*, 490 U.S. at 396).

An officer "violates the Fourth Amendment, and is denied qualified immunity, if he or she uses gratuitous and excessive force against a suspect who is under control, not resisting, and obeying commands." *Saunders v. Duke*, 766 F.3d 1262, 1265 (11th Cir. 2014). Plaintiff has not stated a claim against Nowlin because, based on Plaintiff's own allegations and the

incorporated exhibit, at the time force was used against him, he was not under control, was resisting and not obeying lawful commands, and was acting in a manner which placed himself at risk for harm; thus, the force used to temper his obstruction was not gratuitous or excessive.

### *Allegations*

While Plaintiff's statement of facts presents a version of the events, under the law, the attached incident report (ECF No. 30-1), and the facts set forth therein, control. *Friedman v. Market St. Mortg. Corp.*, 520 F.3d 1289, 1295 n.6 (11th Cir. 2008) ("where there is a conflict between allegations in a pleading and exhibits thereto, it is well settled that the exhibits control.") The many narratives included in the incident report establish that no constitutional violation occurred on April 17, 2019. When Plaintiff was brought into the jail facility, he was observed chewing on something in his mouth. ECF No. 30-1 at 3, 6. The narrative drafted by Defendant Eric Matthew Hays' stated that both he and Defendant David Michael Rowell advised Plaintiff "several times to spit out the object and he wouldn't be charged with introduction" but that Plaintiff refused to comply to all commands. *Id*. at 3. At that time, Plaintiff was observed to be sweating and under the influence of an intoxicant. *Id*. Nowlin stated in his narrative that he also gave Plaintiff several commands at this stage to spit out what was in his

mouth or remove the item. *Id*. at 5. Nowlin stated that Defendant Patrick Roy Campbell also gave numerous similar orders, but that Plaintiff refused those commands as well. *Id*. Defendant John Robert Pendleton's narrative also reflects that numerous orders were given to Plaintiff to spit out the item in his mouth but that Plaintiff refused to comply. *Id*. at 6.

After Plaintiff's numerous refusals, Plaintiff was brought to the change out room so that a strip search could be conducted to ensure Plaintiff had no other items of contraband on his person. *Id*. at 2 – 7. There, the narratives reflect that Plaintiff continued to be given orders and that he continued to refuse those directives. *Id*. at 4 – 7. The narratives outline that O.C. spray bursts were utilized upon Plaintiff's refusal to follow verbal commands. Plaintiff thereafter attempted to "snatch away" from the deputies and was placed on the floor for better officer control. *Id*. at 4. Plaintiff was given additional orders, but he refused to comply; additional bursts of O.C. spray were administered with negative results. *Id*. Mandibular pressure points were administered and Plaintiff was confirmed to be holding a plastic baggie in his cheek area. *Id*. Plaintiff was given additional commands which he refused and a contact tase to Plaintiff's back was administered with negative results. *Id*. It was at this time that Plaintiff was placed on the floor to complete the strip search, at which point he attempted to "spit blood" at the deputies. *Id.*

at 5. Plaintiff also grabbed at the deputies' hands and arms and, at one point, one of the deputies' taser. *Id.* at 5 – 6. Plaintiff did not cooperate with the attempted strip search and continued to physically resist. O.C. spray was again utilized to gain compliance, but Plaintiff continued to refuse lawful commands. *Id.* at 5. The deputies were able to complete the strip search but Plaintiff refused to stand and still maintained the contraband in his mouth. *Id.* As a result of Plaintiff's continued non-compliance and obstructive behavior, officers attempted to place Plaintiff in a restraint chair; however, Plaintiff resisted directives given by staff to sit in the chair by attempting to stand up and fight with the staff. *Id.* at 7. He tried to kick the deputies present. *Id.* Plaintiff also grabbed the wrist of Defendant Pendleton and a single strike to the chest was utilized to stun Plaintiff and release the grip, although Plaintiff resisted responding to the single strike. *Id.* at 5. It was during this resistance that a contact tase to Plaintiff's chest was administered to gain compliance. *Id.* at 5. Plaintiff was successfully secured in the chair, but still had the item in his mouth, despite continued verbal commands to spit it out. *Id.* at 5. After a period of time, but under constant observation, Plaintiff was brought out for a decontamination shower and dressed in an orange jumpsuit. *Id.* at 6. Plaintiff was transported to the hospital because he still had the item in his mouth, and the contents of the bag were unknown. *Id.* at 7. Before the

ambulance left the area, Plaintiff spit out the bag in his mouth, which was confiscated. *Id*. at 11.

**Nowlin**

Plaintiff alleges that Nowlin is liable under § 1983 for excessive force because he "actively participated in the restraint and administration of cruel and unusual punishment when he threw the Plaintiff to the ground who was locked up in a seizure and could not comply with his commands." ECF No. 30 at 13, ¶3. Plaintiff also alleges that Nowlin "held the Plaintiff's eyes open so that Lt. Hays could administer O.C. (pepper spray) directly into the eye sockets" and that he "assisted in placing the Plaintiff in restraints." *Id*. However, as previously established, the actions alleged by Plaintiff do not state a claim for excessive force; simply being present during the administration of O.C. spray[3] and the application of restraints were all objectively reasonable in light of Plaintiff's continued resistance and disobedience to lawful commands.

The actions outlined in the incident report show that Plaintiff refused numerous lawful orders and directives throughout his time at the Santa Rosa County Jail and offered continuous physical resistance. Plaintiff was given

---

[3] There is no evidence to support Plaintiff's baseless allegation that Nowlin held open the eyes of Plaintiff during the administration of the O.C. spray.

numerous verbal commands by Nowlin to spit out the item that was willfully holding in his mouth but refused to do so. Plaintiff also attempted to engage in physical violence toward the Defendants, including Nowlin, in this matter, by being physically combative and spitting blood at them. Thus, in evaluating the excessive force claim against Nowlin, the question to be asked is whether his "actions are objectively reasonable in light of the facts and circumstances confronting [him], without regard to [his] underlying intent or motivation." *Garczynski v. Bradshaw*, 573 F.3d 1158, 1166-67 (11th Cir. 2009). Nowlin, as well as the other detention deputies, reasonably believed that Plaintiff possibly had concealed a drug or other illegal substance in his mouth. ECF No. 30-1 at 5. The concern for the safety is obvious: an inmate cannot be allowed to conceal items in or on his body and be admitted into a secure facility. Certainly, an officer may use force to extricate an item of contraband from an uncooperative individual who is being processed into a jail after an arrest; however, there are no facts in the incident report which support Plaintiff's allegation that he was "thrown to the ground" by Nowlin. There is no reference whatsoever in the incident report that Nowlin ever touched Plaintiff once Plaintiff arrived at the jail and entered into the intake area.

The narratives in ECF No. 30-1 only support that Nowlin assisted in restraining Plaintiff during the strip search while in the change out room, due

to Plaintiff's refusal to comply with numerous commands, and then assisting Plaintiff to his feet. ECF No. 30-1 at 5. Nowlin further states that he assisted in placing Plaintiff into the restraint chair, as Plaintiff resisted going into the chair, and then later held Plaintiff's head so that he could be secured into the restraint chair. *Id*. During the course of the strip search, Plaintiff had become physically non-compliant, which necessitated Plaintiff being restrained in the restraint chair. There was a clear need for restraints and the force used was not disproportionate to the need. *See Campbell v. Sikes*, 169 F.3d 1353, 1374-77 (11th Cir. 1999) (recognizing that the user of "L" shaped restraint and straightjacket was a permissible use of force on prisoner who had taken affirmative acts toward harming herself and posed a serious threat of further self-harm).

While numerous means of compliance had been utilized prior to the use of the restraint chair, Plaintiff remained non-compliant and thereafter became physically combative. It is at this stage that Plaintiff grabbed the wrist of Defendant Pendleton and Nowlin stated that, as a result of Plaintiff grabbing Defendant Pendleton by the wrist, he utilized a single strike to his chest. ECF No. 30-1 at 5. After the single strike, Plaintiff did not release the wrist of Defendant Pendleton, so he was tased by Defendant Hays and Plaintiff ultimately released the wrist at that time. *Id*. Nowlin thereafter

attempted to hold Plaintiff still so that he could be further secured into the restraint chair as Plaintiff was actively resisting. *Id*. With regards to Plaintiff's act of grabbing the arm of one of Defendant Pendleton, this act could be reasonably interpreted as Plaintiff responding to the deputy's force with physical force of his own. This is not a case where Nowlin used gratuitous force against a non-resisting handcuffed Plaintiff, which the Eleventh Circuit has held to be unconstitutional. *Hadley v. Gutierrez*, 526 1324, 1333 (11th Cir. 2008). The single strike was a direct result of Plaintiff's physical force toward another deputy who was engaged in lawful efforts to restrain Plaintiff. Nowlin is thus justified in his use of force toward Plaintiff, via a single strike to the chest, in order to secure the release of Defendant Pendleton's wrist.

As to the other actions Plaintiff takes issue with all were objectively reasonable under the circumstances alleged. First, Nowlin's holding of Plaintiff's arm during the course of the strip search, after Plaintiff's handcuffs were removed during the search, was objectively reasonable; an inmate who has been actively resisting lawful commands for a lengthy period of time cannot simply be released from physical control when his handcuffs are removed; to do otherwise would be a safety concern. Plaintiff is described as being "combative" during the attempt to strip search him. It is reasonable to strip search an inmate who enters a secure facility with an item concealed

in his mouth in order to determine whether any other items of contraband are concealed on his body. Nowlin's later assist to Plaintiff, in bringing him to a standing position from the floor after the strip search, was likewise reasonable, when Plaintiff refused to stand on his own despite being ordered to do so. There are no facts to support any assertion that Nowlin acted in a manner which could be construed as objectively unreasonable. The other allegations made by Plaintiff against Nowlin are wholly unsupported in the incident report, which was provided by Plaintiff in support of his claims against Nowlin, and should be disregarded. Accordingly, Plaintiff has failed to state a claim for excessive force against Nowlin as to the incident which occurred at the Santa Rosa Jail on April 17, 2019.

## D.   <u>Qualified Immunity</u>

Qualified immunity shields officers from liability; indeed, it shields all officers except those who are "plainly incompetent or one who is knowingly violating the federal law." *Lee*, 284 F.3d at 1194. The doctrine provides "immunity from suit rather than a mere defense to liability." *Pearson v. Callahan*, 555 U.S. 223, 237 (2009) (quoting *Mitchell v. Forsyth*, 472 U.S. 511, 526, (1985)) (internal quotations omitted). Consequently, the court must "resolv[e] immunity questions at the earliest possible stage in litigation." *Pearson*, 555 U.S. at 232 (quoting *Hunter v. Bryant,* 502 U.S. 224, 227

(1991)) (internal quotations omitted). When determining whether an officer is entitled to qualified immunity, the Court will balance "the need to hold [officers] accountable when they exercise power irresponsibly and the need to shield [them] from harassment, distraction, and liability when they perform their duties reasonably." *Pearson*, 555 U.S. at 231. Qualified immunity should be applied to Nowlin unless Plaintiff can allege facts which show that his actions, individually, were so egregious and unacceptable to have *blatantly* violated the Constitution. *See Lewis v. City of W. Palm Beach, Fla.,* 561 F.3d 1288, 1292 (11th Cir. 2009). This standard is only met when "every reasonable officer would conclude that the excessive force used was plainly unlawful." *Id.* (citing *Priester v. City of Riviera Beach, Fla.,* 208 F.3d 919, 926–27 (11th Cir.2000)). An officer asserting qualified immunity has the burden to show that he was acting within his discretionary authority at the time of the alleged incident. *Piazza v. Jefferson Cnty.*, 923 F.3d 947, 951 (11th Cir. 2019). Here, Plaintiff does not assert that Nowlin was acting in any other capacity other than as a deputy employed by the Santa Rosa County Sheriff's Office at the time of the allegations. In his Complaint, Plaintiff refers to Nowlin by his title, that being "classification and release deputy." ECF No. 30 at 13. Nowlin's narrative in the incident report also confirms that his actions were "undertaken pursuant to the performance of [his] duties and

within [his] scope of authority." *Rich v. Dollar*, 841 F.2d 1558, 1564 (11th Cir. 1988) (quoting *Barker v. Norman,* 651 F.2d 1107, 1121 (5th Cir.1981)). The processing of an arrestee through intake for entrance into a jail would involve searches for contraband, which would be considered part of the performance of a detention deputy's normal job duties and within their delegated authority. Plaintiff asserts no facts to the contrary. Accordingly, it can be concluded that Nowlin has satisfied the "discretionary function" burden at this stage of the proceedings.

If an officer satisfies his burden of demonstrating that he was acting within the scope of his discretionary authority when the allegedly wrongful acts occurred, the burden then shifts to the plaintiff to establish that the officer violated a constitutional right that was clearly established at the time of the alleged violation. *Piazza*, 923 F.3d at 951*.* The officer is entitled to qualified immunity if the plaintiff fails to show either that there was some constitutional violation or that it was clearly established, and a Court may consider these two elements in either order. *Id.* As previously outlined, the acts complained of by Plaintiff do not constitute a constitutional violation because, in light of the supportive exhibit in ECF No. 30-1, the actions of Nowlin were reasonable and necessary. The force used against Plaintiff on April 17, 2019, was "reasonably proportionate to the need for that force." *Lee*,

284 F.3d at 1198. Plaintiff resisted numerous lawful commands by the Defendants, including Nowlin, and posed an objectively immediate threat to his own safety and, at various points, the safety of the detention deputies. Plaintiff has failed to establish that Nowlin violated his right to be free from excessive force under the Fourth Amendment.

Plaintiff likewise cannot show that the right he contends was violated "was clearly established at the time of the alleged violation." *Piazza* 923 F.3d at 951. In doing this, Plaintiff would have to show that "every reasonable official would have understood that what he is doing violates the Constitutional right at issue." *Gates v. Khokhar*, 884 F.3d 1290, 1303 (2018). This inquiry "must be undertaken in light of the specific context of the case, not as a broad general proposition." *Saucier v. Katz*, 533 U.S. 194, 202 (2001); *see also Mullenix v. Luna*, 577 U.S. 7, 12 (2015) ("The dispositive question is whether the violative nature of *particular* conduct is clearly established." (internal quotation marks omitted)). It is well-settled in this circuit that force can be used against an individual who is believed to have contraband in his mouth but refuses to remove it. *German*, 399 Fed. Appx. at 557. Courts have also recognized that various forms of non-lethal force may be used against an individual who continually resists lawful commands or creates a security risk inside of a jail environment. *See McCormick*, 333

F.3d at 1245; *Zivojinovich*, 525 F.3d at 1073; *Fennell v. Gilstrap*, 559 F.3d 1212, 1217 (11th Cir. 2009) (an officer may use force "in a good-faith effort to maintain or restore discipline"); *Bennett v. Parker*, 898 F.2d 1530, 1533 (11th Cir. 1990) ("prison guards may use force when necessary to restore order and need not wait until disturbances reach dangerous proportions before responding"). The foregoing analysis, in light of the relevant case law in this Circuit, establishes that at the time of the incident there was no clearly established law identifying any of the uses of force as unconstitutional. As discussed above, the facts plainly support this Court finding that the Defendants acted, at all times, in an objectively reasonable manner based upon Plaintiff's behavior. Nowlin is entitled to qualified immunity.

## <u>CONCLUSION</u>

Plaintiff has failed to state a claim of excessive force against Nowlin. Accordingly, because Plaintiff has failed to allege sufficient facts which establish to that his constitutional rights were violated by Nowlin, Nowlin is entitled to qualified immunity. Plaintiff has been provided five opportunities to allege a viable constitutional violation based on the incident which occurred in the jail on April 17, 2019 and has failed to do so. As a result, Plaintiff's Fifth Amended Complaint is due to be dismissed with prejudice against Nowlin.

## <u>CERTIFICATE OF COMPLIANCE OF RULE 7.1</u>

Pursuant to Local Rule 7.1(F), I hereby certify that the foregoing motion and memorandum is 4576 words in length.

Respectfully submitted this 13th day of March 2023.

WARNER LAW FIRM, P. A.

*/s/ Alicia D. Carothers*
ALICIA D. CAROTHERS
Florida Bar No. 0099339
501 W. 11th Street, Suite A
Panama City, FL  32401
Phone No. (850) 784-7772
pleadings@warnerlaw.us

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that a copy of the foregoing was filed via CM/ECF this 13th day of March 2023, and a copy was mailed through USPS to Plaintiff at:

Lawtey Correctional Institute
P.O. Box 2000
Lawtey, FL 32058

*/s/ Alicia D. Carothers*
ALICIA D. CAROTHERS
Florida Bar No. 0099339