UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

SHELDON LEE HUTCHINS,
     Plaintiff,

vs.                          Case No.: 3:20cv5952/MCR/ZCB

DAVID MICHAEL ROWELL, et al.,
     Defendants.
_____/

## REPORT AND RECOMMENDATION

A man put something in his mouth after being arrested for a minor offense. He refused to spit it out. Sheriff's deputies responded by repeatedly pepper spraying the arrestee in the face (twice holding his eyes open and spraying into them at close range), using a Taser on him over and over again, placing him in a chokehold, hitting him twice in the face, and then placing him in a restraint chair. Once secured in the restraint chair, the arrestee was repeatedly tased in the chest. While some of these things happened, the arrestee was handcuffed. He was neither fighting with the deputies nor attempting to flee. But he was convulsing, seizing, and at times unresponsive. Paramedics were eventually summoned, and the arrestee spit out the item (a baggie of drugs) to the paramedics.

Those are the facts of this case as alleged by Plaintiff. If the allegations are assumed true and construed liberally (as they must be at the pleading stage), should

1

Plaintiff's 42 U.S.C. § 1983 excessive force action against the deputies be dismissed because of qualified immunity?  That is the crux of the matter before the Court today.

## I.    Factual Allegations

On April 17, 2019, Defendant David Rowell, a deputy with the Santa Rosa County Sheriff's Office, arrested Plaintiff for driving on a suspended license. (Doc. 30 at 7).  Defendant Rowell handcuffed Plaintiff and placed him a patrol car for transport to the Santa Rosa County Jail.  (*Id.*).

Once at the jail, Defendant Rowell observed that Plaintiff was sweating and appeared to be in distress.  (*Id.*).  The handcuffs were removed, and Plaintiff began to "seize up" and "convulse."  (*Id.*).  Deputy Rowell and another deputy, Defendant Nowlin, ordered Plaintiff to turn around and face them.  (*Id.*).  Plaintiff responded, "I can't."  (*Id.*).

Additional deputies arrived to assist.   They were Defendant Lt. Hays, Defendant Sgt. Campbell, Defendant Deputy Pendleton, and Defendant Deputy Schultz.  (*Id.* at 8).  The deputies noticed that Plaintiff had something in his mouth, which they ordered him to spit out.  (*Id.*).  Plaintiff was informed that he would not be charged with introducing contraband into the jail if he spit out what was in his mouth.  (*Id.*).  At that time, Plaintiff was "seized up" and having "convulsions." (*Id.*).  Defendant Hays ordered Plaintiff to spit out the item.  (*Id.*).  According to

2

Plaintiff, he was unable to comply because of the seizure.  (*Id*.).  Defendant Hays then ordered Defendant Pendleton to pepper spray Plaintiff in the face.  (Doc. 30 at 7).  When Plaintiff still did not spit out what was in his mouth, the deputies took him to the floor.  (*Id.* at 8, 12).

Once Plaintiff was on the floor, Defendant Nowlin held one of Plaintiff's eyes open while Defendant Hays shot pepper spray into it.  (*Id.* at 8).  Defendant Pendleton then administered another burst of pepper spray.  (*Id.*).  Defendant Campbell then got in on the action by holding Plaintiff's other eye open while Defendant Nowlin shot pepper spray into it.  (*Id.* at 8-9).  During the repeated administrations of pepper spray, the deputies continued to unsuccessfully order Plaintiff to "spit it out."  (*Id.* at 8).  Next, Defendant Schultz placed Plaintiff back in handcuffs.  (*Id.* at 8-9).

At some point during the incident, Plaintiff was placed in a chokehold and also a mandibular hold.[1]  (*Id.* at 9).  Defendant Campbell then directed Defendant Pendleton to use his Taser on Plaintiff.  (*Id.*).  Defendant Pendleton proceeded to tase Plaintiff on his back "multiple times."  (*Id.*).  Defendant Hays then released his mandibular hold and started using his Taser on Plaintiff's back.  (*Id.*).  The officers

---

[1] Although somewhat unclear, Plaintiff appears to allege that he was placed in two separate holds—a "chokehold" by Defendant Campbell and a "mandibular hold" by Defendant Hays.  (*See* Doc. 30 at 9).

3

were physically holding Plaintiff down "while he was convulsing from a suspected overdose of methamphetamine and was completely unresponsive" and "in obvious signs of medical distress." (*Id.* at 9, 11-12). At that time, Plaintiff was "handcuffed and shackled at the feet." (*Id.* at 9).

Defendant Schultz then retrieved a restraint chair. (*Id.*). Defendant Pendleton proceeded to hit Plaintiff twice in the face, causing him to bleed from his nose and mouth. (*Id.*). Plaintiff "began to lose consciousness," as the officers drug him from the intake area to another room for placement in the restraint chair. (*Id.*). As Plaintiff was "nearly unconscious," Defendant Hays tased him again on the back. (*Id.*). Once Plaintiff was secured in the restraint chair, Defendant Hays tased him multiple times in the chest area. (*Id.* at 10, 12).

Defendants then placed Plaintiff in a secure holding cell where he remained until paramedics arrived. (*Id.* at 10). Once paramedics arrived, Plaintiff was placed in an ambulance along with Deputy Carter (a non-Defendant). (*Id.*). Plaintiff's seizure ended soon thereafter, and he spit out the plastic baggie that was in his mouth. (*Id.*). Deputy Carter retrieved the baggie, which contained methamphetamine. (*Id.*). According to Plaintiff, the incident caused him to experience "pain and suffering that has left him permanently disabled." (*Id.* at 16).

## II. Motion to Dismiss Standard

Defendants have moved to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure. To survive dismissal under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (cleaned up). The plausibility standard is met only where the facts alleged enable "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Plausibility means "more than a sheer possibility that a defendant has acted unlawfully." *Id.* "Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Id.* (internal quotation marks omitted).

At the motion to dismiss stage, the complaint's allegations are taken as true and construed in the light most favorable to the plaintiff. [2] *Chabad Chayil, Inc. v.*

---

[2] Plaintiff has attached to the fifth amended complaint an incident report completed by Defendants. (Doc. 30-1). The fifth amended complaint makes several references to the incident report. Defendants argue that the Court, therefore, is required to accept as true the statements made in the incident report. (Doc. 44 at 4). The Court disagrees. A court should consider an exhibit attached to the complaint at the motion to dismiss stage if the exhibit is (1) central to the plaintiff's claim, (2) its authenticity is not challenged; and (3) its contents are not in dispute. *Chabad Chayil, Inc.*, 48 F.4th at 1232. Here, it cannot be fairly said that the contents of the incident report are not in dispute. Plaintiff has claimed that the incident report is "edited." (*See* Doc. 76). Moreover, the version of events set forth in the fifth amended complaint

5

*Sch. Bd. of Miami-Dade Cnty.*, 48 F.4th 1222, 1229 (11th Cir. 2022). Additionally, a *pro se* litigant's complaint must be liberally construed. *Boxer X v. Harris*, 437 F.3d 1107, 1110 (11th Cir. 2006).

### III.   Discussion

Defendants have moved to dismiss the fifth amended complaint. (Docs. 44, 56, 81). They argue that Plaintiff's official capacity claims should be dismissed because Plaintiff has not identified a policy or custom of Santa Rosa County that caused the alleged constitutional injury. (Doc. 44 at 5-6; Doc. 81 at 5-6). With respect to Plaintiff's individual capacity claims, Defendants argue that Plaintiff has failed to state an excessive force claim and that they are entitled to qualified

---

prepared by Plaintiff is detailed as opposed to conclusory, and Plaintiff's version varies considerably from the version in Defendants' incident report. Thus, the Court will base its decision regarding the motion to dismiss on the allegations presented in the fifth amended complaint without regard to the attached incident report. *See Brown v. Newton Cnty. Sheriff's Off.*, 273 F. Supp. 3d 1142, 1153-54 (N.D. Ga. 2017) (refusing to consider police reports attached to *pro se* plaintiff's civil rights complaint where it was clear from the allegations in the complaint that the plaintiff "disput[ed] critical aspects of the officers' accounts" set forth in the police reports). As another district court explained in a similar situation, it would be "counterintuitive to . . . accept as true in a motion to dismiss the Defendants' own statements in their own police reports merely because the *pro se* Plaintiff attached the police reports to support a different fact in his case." *Hamilton v. Williams*, No. 8:18-cv-885, 2019 WL 5653450, at *3 (M.D. Fla. Oct. 31, 2019); *see also Miffin v. Bradshaw*, No. 8:08-cv-592, 2009 WL 1953534, at *8 (M.D. Fla. July 6, 2009) (refusing to consider as true information found in a police report attached to *pro se* litigant's civil rights complaint).

6

immunity.[3]  (Doc. 44 at 6-21).  (Doc. 44 at 21-25; Doc. 56 at 2-3; Doc. 81 at 16-20).

Plaintiff has opposed the motion to dismiss.  (Doc. 97).[4]

### A.    Plaintiff's official capacity claims

The fifth amended complaint states that Defendants are being sued in their official and individual capacities.  (Doc. 30 at 3-5).  Defendants have moved to dismiss the official capacity claims because Plaintiff has not identified a custom or policy of Santa Rosa County that caused the alleged constitutional violations.  The Court agrees that the official capacity claims should be dismissed.

An official capacity claim against a government official (i.e., a county employee) is a claim against the governmental entity (i.e., the county) that employs the official.  *Kentucky v. Graham*, 473 U.S. 159, 165 (1985).  Under what has become known as the *Monell* liability doctrine,[5] to recover in a § 1983 action against

---

[3] In a civil rights case under § 1983, the analysis of a motion to dismiss for failure to state a claim and the first step of the qualified immunity analysis "merge when presented in a Rule 12(b)(6) motion" because both involve a determination of whether the plaintiff has alleged a constitutional violation.  *Danielle v. Adriazola*, 284 F. Supp. 2d 1368, 1373 (S.D. Fla. 2003).

[4] Plaintiff attached to his response various exhibits that appear to have been obtained in discovery.  (Doc. 97-1)  The Court will not consider those exhibits nor any information contained in them for purposes of ruling on the motions to dismiss.  *See generally Davis v. Clayton*, No. 7:17-cv-02076, 2018 WL 3475438, at *2 (N.D. Ala. July 19, 2018) ("Generally speaking, evidence not included on the face of a complaint should not be considered in ruling on a Rule 12(b)(6) motion to dismiss").

[5] This doctrine derives its name from the Supreme Court's decision in *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658 (1978).

7

a county a civil rights plaintiff must show that (1) "his constitutional rights were violated," (2) the county "had a custom or policy that constituted deliberate indifference to that constitutional right," and (3) "the policy or custom caused the violation." *McDowell v. Brown*, 392 F.3d 1283, 1289 (11th Cir. 2004).  To make that showing, a plaintiff must "identify either (1) an officially promulgated county policy or (2) an unofficial custom or practice of the county shown through the repeated acts of a final policymaker for the county." *Grech v. Clayton Cnty.*, 335 F.3d 1326, 1329-30 (11th Cir. 2003).  "A policy is a decision that is officially adopted by the municipality, or created by an official of such rank that he or she could be said to be acting on behalf of the municipality." *Wayne v. Jarvis*, 197 F.3d 1098, 1105 (11th Cir. 1999) (cleaned up).  A custom "is a practice that is so settled and permanent that it takes on the force of law." *Id*.

In this case, Plaintiff has sued employees of Santa Rosa County in their official capacities.  To prevail on the official capacity claims, Plaintiff would need to show that Santa Rosa County had a policy or custom of encouraging or permitting excessive force and that it was the moving force behind Defendants' alleged use of excessive force.  The fifth amended complaint does not plausibly allege that such a policy or custom caused Plaintiff's constitutional injury.  Accordingly, Defendants' motion to dismiss Plaintiff's official capacity claims should be granted.  *See Real v.*

8

*Perry*, 810 F. App'x 776, 780 (11th Cir. 2020) (affirming dismissal of *Monell* liability claim against officers where there was no allegation that municipality they worked for had a custom or policy of permitting excessive force); *see also Brooks v. Blevins*, No. 4:19cv288, 2020 WL 4283074, at *2 (N.D. Fla. July 27, 2020) (dismissing official capacity claims against officers because there were no allegations that the municipality had a custom or policy authorizing excessive force).

### B.    Qualified immunity

Plaintiff has also sued Defendants in their individual capacities.  Defendants have moved to dismiss those individual capacity claims because of qualified immunity.   "Under the qualified immunity doctrine, government officials performing discretionary functions are immune not just from liability, but from suit, unless the conduct which is the basis for suit violates clearly established federal statutory or constitutional rights of which a reasonable person would have known." *Sanders v. Howze*, 177 F.3d 1245, 1249 (11th Cir. 1999).

For defendants to receive qualified immunity, "they must first demonstrate that they were engaged in a discretionary duty."  *Mercado v. City of Orlando*, 407 F.3d 1152, 1156 (11th Cir. 2005).  If they were, then the burden shifts to the plaintiff to establish that qualified immunity is unwarranted.   *Id*.  Meeting that burden requires "satisfying a two-part inquiry."  *Id*.  First, the plaintiff's allegations, if true,

must establish a violation of a constitutional right.  *Brown v. City of Huntsville*, 608 F.3d 724, 734 (11th Cir. 2010).  Second, that constitutional right must have been clearly established when the incident occurred.  *Id*.  The plaintiff must satisfy both parts, but the "analysis may be done in whatever order is deemed most appropriate for the case."  *Id*.

### 1.    Constitutional violation analysis

It is undisputed that Defendants were performing a discretionary duty.  So, the Court must proceed to determine whether Plaintiff's fifth amended complaint sufficiently alleges that Defendants violated one of Plaintiff's constitutional rights. Plaintiff claims that Defendants violated the Constitution by using excessive force and failing to intervene when such force was used.  Because Plaintiff was a recent arrestee at the time of the alleged use of force, his excessive force claim will be analyzed under the Fourth Amendment.  *See Saunders v. Duke*, 766 F.3d 1262, 1266-67 (11th Cir. 2014) (applying the Fourth Amendment to a claim that officers used excessive force shortly after arresting the plaintiff); *see also Vinyard v. Wilson*, 311 F.3d 1340, 1347 (11th Cir. 2002) (applying the Fourth Amendment to a claim that officers used excessive force while transporting the plaintiff to jail).

The Fourth Amendment protects individuals from unreasonable searches and seizures by government officials.  That protection "encompasses the plain right to

10

be free from the use of excessive force." *Vinyard*, 311 F.3d at 1347 (cleaned up). To prevail on a Fourth Amendment excessive force claim, a plaintiff must show "that the force purposely or knowingly used against him was objectively unreasonable." *Kingsley v. Hendrickson*, 576 U.S. 389, 397 (2015). When determining the reasonableness of an officer's use of force, "a court must ask whether a reasonable officer would believe that this level of force is necessary in the situation at hand." *Stephens v. DeGiovanni*, 852 F.3d 1298, 1321 (11th Cir. 2017). If the force used was objectively unreasonable, then there has been a Fourth Amendment violation. *Myrick v. Fulton Cnty.*, 69 F.4th 1277, 1301 (11th Cir. 2023). When conducting the objective reasonableness inquiry, a court should consider three factors: (1) the severity of the crime giving rise to the arrest; (2) whether the arrestee posed "an immediate threat to the safety of the officers or others"; and (3) whether the arrestee was actively resisting or attempting to flee. *Graham v. Connor*, 490 U.S. 386, 396 (1989). Courts must remember that whether force "is reasonable under the Fourth Amendment requires a careful balancing of the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake." *Vinyard*, 311 F.3d at 1347 (cleaned up).

11

An officer, regardless of supervisory status, can also violate the Fourth Amendment by not intervening when another officer used excessive force. *Byrd v. Clark*, 783 F.2d 1002, 1007 (11th Cir. 1986). This liability arises when the officer was in a position to intervene but failed to do so. *Priester v. City of Riviera Beach*, 208 F.3d 919, 927 (11th Cir. 2000).

In the current case, Plaintiff alleges multiple uses of force by multiple officers occurring in quick succession. The Court will analyze the conduct of each Defendant while keeping in mind the broader context in which those individual acts occurred. Let's start with Defendant Hays—the highest-ranking officer present during the incident.

### a.    Defendant Hays

Plaintiff claims that Defendant Hays—a Lieutenant with the Santa Rosa County Sheriff's Office—personally used excessive force and also ordered others to do so. More specifically, Plaintiff claims Defendant Hays did the following: (1) ordered Defendant Pendleton to pepper spray Plaintiff in the face (Doc. 30 at 8); (2) pepper sprayed Plaintiff in the face after ordering Defendant Nowlin to hold Plaintiff's eye open to maximize the impact of the spray (*id*.); (3) placed Plaintiff in a mandibular hold (*id*. at 9); and (4) repeatedly used a Taser on Plaintiff, including

several times on Plaintiff's chest while he was secured in a restraint chair (*id*. at 9, 11-12).

　　According to Plaintiff, Defendant Hays took these actions despite observing that Plaintiff appeared to be in distress.  (*Id*. at 11).  Additionally, Plaintiff claims he was handcuffed and shackled when Defendant Hays took some of these actions.  (*Id*.).  In fact, Plaintiff claims he was nearly unresponsive during part of the incident.  (*Id*. at 8).  Now, the Court turns to the question of whether Defendant Hays' alleged actions were objectively unreasonable.   Answering that question requires consideration of the factors identified above.

　　First is the severity of the crime for which Plaintiff was arrested.  From the facts presented in the fifth amended complaint, it appears Plaintiff was arrested for driving with a suspended license. (Doc. 30 at 7).  That is a non-violent and minor offense.  And as the Eleventh Circuit has recognized, "[g]enerally, more force is appropriate for a more serious offense and less force is appropriate for a less serious one."  *Vinyard*, 311 F.3d at 1347 (cleaned up).  This factor, therefore, weighs in Plaintiff's favor.

　　The second factor is whether the arrestee posed an immediate threat to the safety of the officers or others.  Based on Plaintiff's allegations, he did not pose an immediate threat to the safety of the officers or others when Defendant Hays ordered

13

him to be pepper sprayed, pepper sprayed him in the face while his eye was held open, placed him in a mandibular hold, and repeatedly used a Taser on him—including repeatedly in the chest while Plaintiff was secured in a restraint chair. Plaintiff claims he was unresponsive during parts of the incident and secured in handcuffs during others.  There are no allegations suggesting that Plaintiff had a weapon or was threatening the officers.  Because Plaintiff did not pose an immediate threat to the safety of the officers or others when Defendant Hays used force against Plaintiff, this factor favors Plaintiff.

The third factor requires the Court to consider whether the arrestee was actively resisting arrest or attempting to flee.  Plaintiff was not attempting to flee in this case.  He was, however, refusing Defendant Hays' commands to spit out the drugs from his mouth.  Plaintiff claims he was unable to comply with the commands because he was experiencing a medical emergency that caused convulsions.  (Doc. 30 at 7-8).  Although it is possible that Plaintiff's convulsions could have been viewed as some amount of physical resistance, this is not a situation where officers used force against an arrestee who was violently fighting back, threatening harm, or attempting to run away.  This factor, therefore, weighs slightly in Plaintiff's favor.

In addition to these three factors, the Court must balance "the nature and quality of the intrusion on the individual's Fourth Amendment interests against the

14

countervailing governmental interests at stake." *Vinyard*, 311 F.3d at 1347.  There certainly is a legitimate governmental interest in ensuring that arrestees neither smuggle drugs into jail nor destroy evidence by swallowing it.  *Espinoza v. United States*, 278 F.2d 802, 804 (5th Cir. 1960) (holding that the government has a legitimate interest in preventing a suspect from swallowing drugs).  And officers may use some force to vindicate that governmental interest.  *German v. Sosa*, 399 F. App'x 554, 557 (11th Cir. 2012) (holding that officer's use of chokehold to prevent suspect from swallowing drugs was reasonable).  The force used, however, must be reasonable and proportionate to the governmental interest it is designed to serve.  *Piazza v. Jefferson Cnty.*, 923 F.3d 947, 953-54 (11th Cir. 2019).  Thus, although "policemen can use reasonable force to prevent the swallowing of evidence, officers may not constitutionally beat and choke suspects in order to gain that evidence."  *State v. Desmond*, 593 So. 2d 965, 969 (La. Ct. App. 1992).  That is where the problem is in this case—the force allegedly used went well beyond what was reasonable and proportionate under the circumstances.  The governmental interest in preventing evidence destruction and smuggling drugs into a jail did not authorize the nature, quality, and quantity of force that was allegedly used in this case.

It might have been reasonable to pepper spray Plaintiff once when he failed to spit out the drugs as ordered.  But it was unreasonable for Defendant Hays to

repeatedly pepper spray (and order others to pepper spray) Plaintiff. And it was particularly egregious for Defendant Hays to order another officer to hold Plaintiff's eye open so that Defendant Hays' stream of pepper spray would go directly into it. There was no legitimate purpose for such an action. The force allegedly used by Defendant Hays "was plainly excessive, wholly unnecessary, and, indeed, grossly disproportionate" under the circumstances. *Vinyard*, 311 F.3d at 1348-49. That conclusion is consistent with Eleventh Circuit precedent. *See id*. at 1343 (denying qualified immunity where an officer sprayed a restrained arrestee "in the face with two to three bursts of pepper spray" and forcibly grabbed her by the arm); *see also Reese v. Herbert*, 527 F.3d 1253, 1273 (11th Cir. 2008) (holding officers were not entitled to qualified immunity where they "pepper-sprayed [the plaintiff] in the face" when he was not "fighting back or attempting to escape"); *Brown v. City of Huntsville*, 608 F.3d 724, 730-31, 739 (11th Cir. 2010) (finding that qualified immunity was improperly granted where the plaintiff was arrested for a minor offense and was not resisting when the defendant pepper sprayed the plaintiff "in her mouth, eyes, and face").

Similarly, it might have been reasonable to use a Taser on Plaintiff once when he failed to comply with the order to spit out the drugs. But it was unreasonable for Defendant Hays to use the Taser on Plaintiff over, over, and over again. And it was

clearly gratuitous for Defendant Hays to tase Plaintiff in the chest (allegedly multiple times) while he was subdued in a restraint chair.   The Eleventh Circuit has recognized as much.   *See Glasscox v. Argo*, 903 F.3d 1207, 1214-17 (11th Cir. 2018) (denying qualified immunity because the officer's "repeated firing of his taser" on a suspect who was neither resisting nor attempting to flee was "grossly disproportionate to the circumstances"); *see also Helm v. Rainbow City*, 989 F.3d 1265, 1275 (11th Cir. 2021) (finding that officers who used a Taser four times on a person who did not pose a risk of danger were not entitled to qualified immunity); *Wate v. Kubler*, 839 F.3d 1012, 1021-22 (11th Cir. 2016) (holding that use of a Taser repeatedly on a suspect who had ceased resisting and was secured in handcuffs was excessive force); *Landis v. Baker*, 297 F. App'x 453, 461 (6th Cir. 2008) (finding a constitutional violation where officers repeatedly used a Taser on a suspect who was being held down with his arms behind his back).

If the allegations set forth in the fifth amended complaint are proven true, then Defendant Hays' conduct was objectively unreasonable.   He used force (and ordered others to use force) that was excessive and beyond what the Fourth Amendment tolerates.   Based on the allegations, Defendant Hays inflicted gratuitous pain on a person who was arrested for a minor offense, who posed no risk of immediate harm to the officers, who was restrained during a significant part of the incident, who was

17

unresponsive at points, and who was not fighting back or attempting to flee.  Thus, when the facts in the fifth amended complaint are accepted as true, Defendant Hays violated Plaintiff's Fourth Amendment rights.

Support for that conclusion can be found in the Eleventh Circuit's decision in *King v. Reap*, 269 F. App'x 857 (11th Cir. 2008).  There, the plaintiff was pulled over for running a stop sign.  *Id*. at 858.  During the stop, the officers saw the plaintiff place a baggie in his mouth.  *Id*.  The plaintiff refused commands to spit out the baggie.  *Id*.  The officers then handcuffed the plaintiff, threw him to the ground, and hit him in the back with a flashlight.  *Id*.  When the plaintiff still refused to spit out the baggie, the officers pepper sprayed him and "ground his face into the ground while trying to pry his mouth open."  *Id*.  The plaintiff sued the officers for excessive force.  *Id*.

The Eleventh Circuit refused to provide the officers with qualified immunity.  *Id*. at 859-60.  In doing so, the *King* court explained that the officers violated the Fourth Amendment because "when we examine the facts as alleged by [the plaintiff], the amount of force used was not reasonable."  *Id*. at 859.  The Eleventh Circuit distinguished cases from other courts that had upheld the use of force against a suspect who had concealed drugs on his body because those cases involved an

18

"amount of force used [that] was significantly less than that allegedly used here."

*Id*.

Defendant Hays' alleged conduct is at least as objectionable as (and likely more so) that of the officers in *King*. Both in *King* and the current case, officers crossed the line and used force that was disproportionate to the governmental interest in preventing a suspect from swallowing evidence or smuggling drugs into a jail.[6]

---

[6] The Court has not overlooked the cases cited by Defendants. (*See* Doc. 44 at 15-16). None of those cases, however, involved allegations of a similar nature and amount of force as the allegations here. Take for example, *Johnson v. Rogers*, No. 3:10-CV-50, 2012 WL 3231327 (M.D. Ala. July 11, 2012). In that case, the plaintiff had placed a baggie in his mouth when arrested. *Id*. at *3. The defendants placed the plaintiff in a chokehold to prevent him from swallowing the baggie. *Id*. The district court granted qualified immunity to the officers (at the summary judgment stage), finding that the officers did not use excessive force. *Id*. at *8. The decision in *Johnson* can be easily distinguished because it involved only a chokehold. Unlike the current case, the officers in *Johnson* did not (in addition to the chokehold) repeatedly use a Taser, repeatedly use pepper spray (including twice into eyes that were being held open) and inflict two blows to the face of an arrestee who posed no immediate danger to the officers. The same can be said for another case cited by Defendants—*German v. Sosa*, 399 F. App'x 554, 557 (11th Cir. 2010). There, the officers used a chokehold and forcibly opened the arrestee's mouth to retrieve drugs. *Id*. That is not comparable to the type and amount of force that Defendants allegedly used in the current case. The same is true for the other cases cited by Defendants, none of which involved the quantity and variety of force that was allegedly used against Plaintiff.

Indeed, one of the cases cited by Defendants, *Williams v. Bramer*, 180 F.3d 699 (5th Cir. 1999), actually supports the denial of qualified immunity in this case. In *Williams*, an officer twice choked the plaintiff to prevent him from swallowing drugs. *Id*, at 702. The district court found that the officer had not used excessive

19

**b.     Defendant Campbell**

The analysis above regarding Defendant Hays is largely applicable to the remainder of Defendants (except Defendants Rowell and Schultz) and will not be repeated in full for each one.  The Court will, however, provide a brief discussion of the allegations against the remaining Defendants.   With regard to Defendant Campbell—a Sergeant with the sheriff's department—Plaintiff claims Defendant Campbell (1) ordered Defendant Pendleton to pepper spray Plaintiff in the face (Doc. 30 at 15), (2) held open Plaintiff's eye so that pepper spray could be shot directly into it (*id*. at 8), (3) applied a chokehold (*id*. at 9), and (4) ordered Defendant Pendleton to use a Taser on Plaintiff multiple times, including while he was unresponsive (*id*. at 8, 15).  Plaintiff also alleges that Defendant Campbell stood by and did nothing while others used excessive force against Plaintiff.  (*Id*. at 15).

The force allegedly used and ordered by Defendant Campbell was objectively unreasonable under the circumstances.  Particularly egregious are the allegations that Defendant Campbell ordered the repeated use of the Taser on Plaintiff while he was

_____

force.  *Id*.  Reversing, the Fifth Circuit explained that the initial choking was permissible, but the second choking was "clearly excessive" and "objectively unreasonable."  *Id*. at 704.  If choking an arrestee twice to prevent him from swallowing drugs is excessive, then using a chokehold, pepper spraying him repeatedly, tasing him repeatedly, and striking him in the face twice is clearly excessive.

unresponsive and that he held Plaintiff's eye open so that another officer could shoot pepper spray directly into it. Additionally, Defendant Campbell was allegedly present and capable of intervening to prevent others from using excessive force against Plaintiff. Instead of intervening, it is alleged that Defendant Campbell actively used and ordered others to use excessive force. If Plaintiff's allegations are true, then Defendant Campbell violated the Fourth Amendment by using excessive force and failing to intervene.

### c.   Defendant Pendleton

According to the fifth amended complaint, Defendant Pendleton (1) repeatedly pepper sprayed Plaintiff in the face (Doc. 30 at 8), (2) used a Taser on Plaintiff multiple times (*id*. at 9), (3) hit Plaintiff in the face twice causing him to bleed from his nose and mouth (*id*. at 8, 14), and (4) helped secure Plaintiff in a restraint chair while he was being tased by Defendant Hays (*id*. at 14). Additionally, Plaintiff alleges that Defendant Pendleton failed to intervene when other officers used excessive force. (*Id*.).

Although it may have been reasonable for Defendant Pendleton to use pepper spray once, it was unreasonable for him to do so repeatedly (especially when his administrations of pepper spray were in addition to those of other Defendants). The same goes for Defendant Pendleton's multiple uses of the Taser on Plaintiff. And

21

hitting Plaintiff in the face twice while he was restrained[7] was uncalled for under the circumstances. *See Hadley v. Gutierrez*, 526 F.3d 1324, 1330 (11th Cir. 2008) (affirming denial of qualified immunity where an officer punched a restrained suspect in the stomach). The alleged blows to the face are made even more egregious by the fact that they were inflicted after Plaintiff had been repeatedly tased, pepper sprayed multiple times (including twice directly in the eyes) and placed in a chokehold. *See Thompson v. Sarasota Cnty. Police Dep't*, No. 8:09-cv-585, 2009 WL 1850314, at *1, *4 (M.D. Fla. June 26, 2009) (denying qualified immunity to officers who threw the plaintiff to the ground, hit him in the face, and choked him after he refused to spit out an item from his mouth). Based on the allegations in the fifth amended complaint, Defendant Pendleton was also present and failed to intervene when other officers used excessive force. If Plaintiff's allegations are true,

---

[7] In one section of the fifth amended complaint Plaintiff seems to indicate that he was not restrained when Defendant Pendleton hit him in the face (Doc. 30 at 9), yet in another section Plaintiff alleges that Defendant Pendleton "struck Plaintiff twice in the face…while Plaintiff was restrained (*id*. at 14). Construing the fifth amended complaint liberally and in the light most favorable to Plaintiff, the Court accepts as true Plaintiff's allegation that he was restrained when struck in the face by Defendant Pendleton. *See generally Mitchell v. Peoples*, 10 F.4th 1226, 1229 (11th Cir. 2021) (explaining that a court must "construe the allegations in a pro se complaint liberally, in the light most favorable to the plaintiff" and "draw[] all reasonable inferences in the plaintiff's favor").

then Defendant Pendleton used excessive force and failed to intervene in violation of the Fourth Amendment.

### d.    Defendant Nowlin

Plaintiff alleges that Defendant Nowlin (1) held one of Plaintiff's eyes open so that Defendant Hays could shoot pepper spray directly in it (Doc. 30 at 8, 13), and (2) pepper sprayed Plaintiff in the other eye while Defendant Campbell held it open (*id*. at 8).   Additionally, Plaintiff alleges that Defendant Nowlin failed to intervene when other officers used excessive force.  (*Id*.).

Holding open Plaintiff's eye to a pepper spray shot by another officer and then pepper spraying directly into Plaintiff's other eye did not further any permissible governmental objective and was done gratuitously to inflict pain.  Such a use of force—assuming it occurred as Plaintiff alleges—was excessive.  Based on the allegations in the fifth amended complaint, Defendant Nowlin was also present and failed to intervene when other officers used excessive force.  If Plaintiff's allegations are true, then Defendant Nowlin used excessive force and failed to intervene in violation of the Fourth Amendment.

### e.    Defendants Rowell and Schultz

The claims against Defendants Rowell and Schultz are different than those against the other Defendants.  So, they require a different analysis.

23

Plaintiff initially alleged that Defendant Rowell used force against him by holding Plaintiff down while Defendant Hays inflicted bodily injuries to Plaintiff. (Doc. 30 at 12).   Plaintiff also initially alleged that Defendant Rowell failed to intervene when other officers used excessive force.   (*Id*.).   Plaintiff has since expressed his desire to "abandon" his claim that Defendant Rowell directly used excessive force, but Plaintiff still wishes to proceed on his failure to intervene claim. (Doc. 97 at 15).[8]  As for Defendant Schultz, Plaintiff claims that Defendant Schultz (1) held him down while other officers pepper sprayed him in the face, (2) held him in the restraint chair while Defendant Hays tased him, and (3) failed to intervene when other officers used excessive force against Plaintiff.  (Doc. 30 at 13).

Looking first to the claim that Defendant Schultz himself used excessive force, the Court finds that holding Plaintiff down while others used pepper spray and tased him was not itself objectively unreasonable.  Plaintiff has not alleged that Defendant Schultz held him down with an unnecessary degree of force.  The Court, therefore, believes Plaintiff has failed to plausibly allege that Defendant Schultz

---

[8] Based on Plaintiff's abandonment of his claim that Defendant Rowell himself used excessive force, the excessive force claim against Defendant Rowell should be dismissed.

personally used excessive force in violation the Fourth Amendment by holding Plaintiff down.

But Plaintiff has plausibly alleged failure to intervene claims against Defendants Schultz and Rowell.  As explained above, "[a]n officer who is present at the scene and who fails to take reasonable steps to protect the victim of another officer's use of excessive force can be liable for failing to intervene, so long as he was in a position to intervene yet failed to do so." *Alston v. Swarbrick*, 954 F.3d 1312, 1321 (11th Cir. 2020) (cleaned up).  When the "use of force is declared clearly unconstitutional, the officers that failed to intervene are no more entitled to qualified immunity than the officer using force." *Helm v. Rainbow City*, 989 F.3d 1265, 1278 (11th Cir. 2021) (cleaned up).

In many respects this case is similar to *Helm*.  The plaintiff in that case was experiencing a seizure.  She was held down by several officers, while another officer repeatedly used a Taser on the plaintiff.  *Id*. at 1269-70.  The officers who held the plaintiff down were denied qualified immunity on the plaintiff's failure to intervene claim.  *Id*. at 1277.  According to the Eleventh Circuit, "by holding down [the plaintiff], [the defendants] were in close proximity to [the other defendant] as he approached with his taser and placed it on [the plaintiff's] chest." *Id*.  The *Helm* court further explained that if the defendants were able to restrain the plaintiff, then

"these officers were close enough to at least attempt to intervene and stop [the other officer]" from repeatedly tasing the plaintiff.  *Id*.

Here, Plaintiff alleges that Defendants Schultz and Rowell were present and in a position to intervene when the other Defendants repeatedly used force against Plaintiff.  Like the defendants in *Helm*, Defendants Schultz and Rowell were not only present—they were also allegedly holding Plaintiff down while the other Defendants used excessive force.  Thus, they were "close enough to at least attempt to intervene and stop," *id*., the other Defendants.  And there were so many different uses of force spread throughout the incident that Defendants Schultz and Rowell had more than ample time to intervene.  Moreover, at least some of the uses of force were done after orders were given by other Defendants.  If there was sufficient time for a Defendant to order a particular type of force and for another to comply with the order, then there was sufficient time for Defendants Schultz and Rowell to intervene.  Accepting the allegations as true, Defendants Schultz and Rowell violated the Fourth Amendment by failing to intervene when others used excessive force.

Because Plaintiff's allegations (taken as true) have established Fourth Amendment violations by Defendants, it is necessary to proceed to the second step of the qualified immunity analysis.  At the second step, the Court must determine whether the constitutional right Defendants violated was clearly established.

26

### 2.      Clearly established right analysis

For qualified immunity purposes, "[c]learly established means that, at the time of the officer's conduct, the law was sufficiently clear that every reasonable official would understand that what he is doing is unlawful." *Helm*, 989 F.3d at 1272.  Put another way, "the salient question is whether the state of the law gave the officers fair warning that their alleged treatment of the plaintiff was unconstitutional." *Vinyard v Wilson*, 311 F.3d 1340, 1350 (11th Cir. 2002) (cleaned up).

In the Eleventh Circuit, a right can be clearly established in one of three ways. First, "a materially similar case has already been decided." *Mercado v. City of Orlando*, 407 F.3d 1152, 1159 (11th Cir. 2005).  Second, there is a "broader, clearly established principle" that "should control the novel facts in this situation."  *Id*. Third, the "case fits within the exception of conduct which so obviously violates th[e] constitution that prior case law is unnecessary."  *Id*.   As explained below, the second and third ways of showing a right to be clearly established are present here.

### a.      A materially similar case has not already been decided.

The most common way to show "that a right is clearly established is by showing that a materially similar case has already been decided." *Bradley v. Benton*, 10 F.4th 1232, 1242 (11th Cir. 2021) (cleaned up).  The plaintiff need not point to a case directly on point, but "existing precedent must have placed the statutory or

constitutional question beyond debate." *Ashcroft v. al–Kidd*, 563 U.S. 731, 741 (2011). For purposes of this inquiry, "existing precedent" means "binding decisions of the Supreme Court of the United States, the United States Court of Appeals for the Eleventh Circuit, and the highest court of the pertinent state, here the Florida Supreme Court." *Wate v. Kubler*, 839 F.3d 1012, 1018 (11th Cir. 2016).

At the time of Defendants' alleged conduct in this case, there was no binding precedent involving materially similar circumstances. Plaintiff has directed the Court to three cases that he says fit the bill.[9] Each case, however, is distinguishable from the instant one.

The first case is *Wilkins v. Gaddy*, 559 U.S. 34 (2010). (Doc. 97 at 13). *Wilkins* involved an Eighth Amendment excessive force claim, whereas the current case involves a Fourth Amendment excessive force claim. That is significant because the standards for the two claims are different. *See Crocker v. Beatty*, 995 F.3d 1232, 1248 (11th Cir. 2021) (explaining that the Fourth Amendment excessive force standard is "objective reasonableness," while Eighth Amendment excessive

---

[9] Plaintiff cites additional cases on the Fourth Amendment issue, but they do not qualify as clearly established law for purposes of qualified immunity. That is so because, as previously explained, only binding precedent counts, and that includes decisions from the U.S. Supreme Court, published decisions of the Eleventh Circuit, and Florida Supreme Court decisions. *J W ex rel. Williams v. Birmingham Bd. of Educ.*, 904 F.3d 1248, 1260 n.1 (11th Cir. 2018); *Gates v. Khokhar*, 884 F.3d 1290, 1296 (11th Cir. 2018).

force claims must meet the "malicious-and-sadistic standard"). In any event, *Wilkins* dealt with the issue of whether a prisoner with *de minimus* injuries could state an Eighth Amendment excessive force claim. *Wilkins*, 559 U.S. at 34. The *Wilkins* Court did not address whether facts materially similar to those in the current case violate the Fourth Amendment.

Next up is *Helm v. Rainbow City*, 989 F.3d 1265 (11th Cir. 2021). (Doc. 97 at 9). Although *Helm* involved a somewhat similar factual scenario, it does not constitute binding precedent for purposes of the clearly established right analysis. That is so because *Helm* was decided in 2021, and Defendants' alleged conduct in this case occurred in 2019. *See generally Wade v. United States*, 13 F.4th 1217, 1225 (11th Cir. 2021) (stating that the focus is on whether the "right was clearly established *at the time* of the challenged conduct") (emphasis added) (cleaned up).

The third case Plaintiff cites is *Priester v. City of Riviera Beach*, 208 F.3d 919, 924 (11th Cir. 2000). (Doc. 97 at 8). *Priester* is not materially similar to the current case for two reasons. First, the plaintiff in *Priester* (unlike Plaintiff here) was not concealing an object in his mouth after being arrested. Second, the use of force at issue in *Priester* was an attack by a police dog—one of the rare types of force that Defendants did not allegedly use against Plaintiff in this case.

29

Because at the time of this incident there was no binding precedent involving materially similar facts, the Court will discuss the two other ways of showing that a right was clearly established.

### b. There is a "broader, clearly established principle" that "should control the novel facts in this situation."

A right may also be clearly established if there is a "broader, clearly established principle" that "should control the novel facts in this situation." *Mercado*, 407 F.3d at 1159. This means that "if some authoritative judicial decision decides a case by determining that 'X Conduct' is unconstitutional without tying that determination to a particularized set of facts, the decision on 'X Conduct' can be read as having clearly established a constitutional principle." *Randall v. Scott*, 610 F.3d 701, 715 (11th Cir. 2010) (cleaned up); *see also Mercado*, 407 F.3d at 1159 (explaining that the "reasoning, though not the holding of prior cases can also send the same message to reasonable officers in novel factual situations"). As explained below, in a series of decisions prior to 2019 the Eleventh Circuit had recognized broad and clearly established principles that were sufficient to place Defendants on notice that their alleged conduct was unconstitutional. That is true even though none of the Eleventh Circuit's cases (at least the published ones) dealt with a factual scenario identical to the current one.

The allegations in this case involve, *inter alia*, the repeated use of a Taser on an arrestee who was charged with a minor crime and was neither actively resisting nor attempting to flee. And several of the uses of the Taser allegedly occurred when Plaintiff was secured (either in a restraint chair or in handcuffs). As of 2018, the Eleventh Circuit had "conclude[d] that it was clearly established . . . that the repeated tasing of a suspect who had ceased any resistance was unlawful." *Glasscox v. Argo*, 903 F.3d 1207, 1218 (11th Cir. 2018); *see also Helm*, 989 F.3d at 1276 (recognizing that *Glasscox*, *Oliver v. Fiorino*, 586 F.3d 898 (11th Cir. 2009), and *Smith v. Mattox*, 127 F.3d 1416 (11th Cir. 1997) had "clearly establish[ed] that the repeated tasing of a subdued arrestee who had ceased any resistance or threatening conduct is excessive in violation of the Fourth Amendment"). Thus, when Defendants repeatedly used the Taser on Plaintiff after he was allegedly restrained and not resisting, they violated a clearly established right. *See Wate*, 839 F.3d at 1021 (holding that in 2012 a "reasonable officer . . . would have had fair warning that repeatedly deploying a Taser on [the plaintiff], after he was handcuffed and had ceased resisting, was constitutionally excessive").

Plaintiff has also alleged that Defendants repeatedly pepper sprayed him, including holding his eyes open and spraying directly into them. In addition to pepper spraying (and tasing) Plaintiff, he was allegedly struck in the face twice, and

placed in a chokehold.  And those uses of force allegedly occurred when Plaintiff was restrained (at least for a portion of the use of force), was not attempting to flee, was not fighting the officers, and posed no immediate danger to the officers.

The Eleventh Circuit has recognized that beginning in 2005 "the law was clearly established . . . that [an officer's] combined gratuitous use of pepper spray and other force" against an arrestee "suspected only of a minor offense" who was not resisting or attempting to flee "violated the Constitution." *Brown*, 608 F.3d at 739-40; *see also Hadley*, 526 F.3d at 1333 (explaining that "a handcuffed, non-resisting defendant's right to be free from excessive force was clearly established in February 2002" and as far back as "1998, our precedent clearly established that government officials may not use gratuitous force against a prisoner who has already been subdued"); *Vinyard*, 311 F.3d at 1355 (finding that officers violated a clearly established right by pepper spraying and grabbing by the hair and arm an intoxicated arrestee who was restrained and posed no risk to the officer).  The principles announced in those cases were sufficient to notify Defendants that it was unconstitutional to do what they allegedly did to Plaintiff.[10]

---

[10] Although not dispositive because of its unpublished status, it is worth mentioning that in 2008 the Eleventh Circuit found that officers violated an arrestee's clearly established rights when they struck him, slammed him to the ground, forced open his mouth, and used pepper spray when the arrestee refused to spit out drugs. *King*

### c.   Defendants' alleged conduct so obviously violated the Constitution that prior case law is unnecessary.

Alternatively, Defendants violated Plaintiff's clearly established rights because their alleged conduct "so obviously violate[d] th[e] constitution that prior case law is unnecessary." *Mercado*, 407 F.3d at 1159.  Under what is known as the "obvious clarity" rule, a court "looks to the officer's conduct and inquires whether that conduct lies so obviously at the very core of what the Fourth Amendment prohibits that the unlawfulness of the conduct was readily apparent to the officer, notwithstanding the lack of fact-specific case law." *Helm*, 989 F.3d at 1276 (cleaned up).

Defendants in this case did not need caselaw to tell them that it was constitutionally impermissible to use the force they used against Plaintiff.  Indeed, it is hard to believe that any reasonable police officer would have thought it was acceptable to use the amount and type of force that Defendants allegedly used in this case.  Although officers may use reasonable force to attempt to prevent an arrestee from swallowing an item in his mouth, they may not repeatedly pepper spray him,

---

*v. Reap*, 269 F. App'x 857, 860 (11th Cir. 2008).  According to the *King* court, "*[t]here is no question* that the [officers] had fair warning that their actions violated [the plaintiff's] constitutional rights."  *Id*. (emphasis added).  The force allegedly used in the current case is at least (if not more) egregious than that used by the officers in *King*.

hold his eyes open and shoot pepper spray directly into them, tase him multiple times (including tasing him repeatedly in the chest while he was secured in a restraint chair), hit him in the face twice, and place him in a chokehold and a mandibular hold.[11]  *See Thompson v. Sarasota Cnty. Police Dep't*, No. 8:09-cv-585, 2009 WL 1850314, at **1, 4 (M.D. Fla. June 26, 2009) (denying a motion to dismiss an excessive force claim where officers pushed, hit, and choked the plaintiff after he refused to spit an item out of his mouth).  What allegedly happened here went "so far beyond the hazy border between excessive and acceptable force that the official had to know he was violating the Constitution even without case law on point." *Mercado*, 407 F.3d at 1160 (cleaned up).  Thus, based on the allegations set forth in the fifth amended complaint, Defendants violated a clearly established right.

## IV.   Conclusion

The fifth amendment complaint sufficiently alleges that Defendants violated the Fourth Amendment by using excessive force and failing to intervene.  Because the alleged conduct violated Plaintiff's clearly established Fourth Amendment

---

[11] Although it is not claimed that Defendants Schultz and Rowell personally used this force against Plaintiff, "in cases where the use of force is declared clearly unconstitutional, the officers that failed to intervene are no more entitled to qualified immunity than the officer using the force." *Helm*, 989 F.3d at 1278.  And once a court determines that "the use of force is not entitled to qualified immunity and other officers could have intervened but did not, the Court does not conduct a separate clearly established analysis pertaining to each officer's failure to intervene." *Id*.

rights, Defendants are not entitled to qualified immunity. It is important to remember that at the motion to dismiss stage the Court is required to accept the allegations as true and to draw all reasonable inferences in Plaintiff's favor. The discovery process may very well unearth information that casts doubt on (or perhaps even outright proves the falsity of) the allegations. If that happens, then Defendants are free to move for summary judgment and seek qualified immunity on the basis of a more developed record. At this stage in the proceeding, however, Defendants should not receive qualified immunity.

Accordingly, it is respectfully **RECOMMENDED** that:

1. The motions to dismiss filed by Defendants (Docs. 44, 56, 81) be **GRANTED IN PART AND DENIED IN PART** as follows.

      a. The motions to dismiss (Docs. 44, 56, 81) be **GRANTED** as to Plaintiff's official capacity claims against all Defendants;

      b. The motion to dismiss filed by Defendants Schultz and Rowell (Doc. 44) be **GRANTED** as to Plaintiff's individual capacity claims that Defendants Schultz and Rowell used excessive force, but be **DENIED** as to Plaintiff's individual capacity claims that Defendants Schultz and Rowell failed to intervene;

      c.    The motions to dismiss filed by Defendants Hays, Campbell, Pendleton, and Nowlin (Docs. 44, 56, 81) be **DENIED** as to Plaintiff's individual capacity excessive force and failure to intervene claims.

2.    That this matter be recommitted to the undersigned for further proceedings.

At Pensacola, Florida this 21st day of August 2023.

/s/ *Zachary C. Bolitho*

Zachary C. Bolitho
United States Magistrate Judge

## <u>NOTICE TO THE PARTIES</u>

**Objections to these proposed findings and recommendations must be filed within fourteen days of the date of the Report and Recommendation.  <u>Any different deadline that may appear on the electronic docket is for the court's internal use only and does not control</u>.  An objecting party must serve a copy of the objections on all other parties.  A party who fails to object to the magistrate judge's findings or recommendations contained in a report and recommendation waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions.  *See* 11th Cir. Rule 3-1; 28 U.S.C. § 636.**